Filed 9/27/05 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2005 ND 166

Bruce Sayler, Petitioner and Appellant

v.

State of North Dakota, Respondent and Appellee

No. 20050048

Appeal from the District Court of Sheridan County, South Central Judicial District, the Honorable Burt L. Riskedahl, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Todd A. Schwarz, Parkade Bldg., 2nd Fl., 515½ E. Broadway, Ste. 103, Bismarck, ND 58501, for petitioner and appellant.

Walter M. Lipp, State’s Attorney, 208 S. Main St., P.O. Box 590, McClusky, ND 58463-0590, for respondent and appellee.

Sayler v. State

No. 20050048

Kapsner, Justice.

[¶1] Bruce Sayler appeals the district court order denying post-conviction relief.  Because Sayler failed to meet his burden of proving ineffective assistance of counsel, we affirm.

I.

[¶2] In August 2003, Estel Naser and Sayler drove from McClusky to Bismarck for Sayler’s follow-up appointment at the Bone and Spine Clinic.  Sayler, who had recently undergone rotator cuff surgery, was to have the stitches on his shoulder removed.   Following the surgery, Sayler had received a prescription for Hydrocodone (Vicodin), a pain medication.  After Sayler’s follow-up visit, he received a prescription for forty pills of Oxycodone (Percocet), a pain medication with a higher potency level.  On the car ride to Bismarck, Sayler told Naser the reason Sayler wished to receive a refill on his pain medication was to sell the pills, not because he was in pain.

[¶3] When Sayler returned to McClusky, he went to Barry Froehlich’s residence where they began drinking heavily.  Sayler left Froehlich’s house leaving his prescription pills behind.  Later that evening, Froehlich placed the prescription medication in a plastic container on a shelf in his house.

[¶4] A search warrant was issued to search Froehlich’s house.  The Oxycodone pills were found in Froehlich’s house in a cabinet at the top of the stairs leading to the basement.  Froehlich later pleaded guilty to possessing the Oxycodone pills with the name “Bruce Sayler” on the label.

[¶5] Sayler was convicted by a jury in Sheridan County on April 20, 2004, of two counts:  acquiring a controlled substance by deception in violation of N.D.C.C. § 19-

03.1-25(1)(c), a class C felony, and delivering a schedule II controlled substance in violation of N.D.C.C. § 19-03.1-23, a class AA felony.  Trial counsel was appointed for Sayler.

[¶6] A day after a guilty verdict was returned, Sayler wrote a letter to Judge Burt L. Riskedahl claiming his trial counsel was “Totaly [sic] Incompatain [sic] at my Trail [sic].”  Sayler further stated in his letter that trial counsel failed to make numerous objections and that Naser should not have been allowed to testify because his mental capacity was lacking.  Another attorney was then appointed as counsel for Sayler.  While no direct appeal was taken of the criminal convictions, Sayler’s attorney did file a post-conviction relief action arguing, among other things, ineffective assistance of trial counsel.

[¶7] On January 4, 2005, a hearing was held in front of Judge Riskedahl on Sayler’s petition for post-conviction relief.  At the hearing, Billie Rud, a nurse practitioner at Medcenter One, testified that Dr. Philip Gattey performed the arthroscopic rotator cuff surgery.  Rud testified to the painful nature of the surgery and the typical medication following a rotator cuff surgery.  In response to a question regarding the type of prescription based on the level of pain, she testified that “you don’t really judge [pain] by how they move.  You judge [pain] by what they tell you.”

[¶8] Several issues were raised at the post-conviction hearing, but on appeal, the only issue raised by Sayler is whether the failure to call a witness constitutes ineffective assistance of counsel.

II.

[¶9] Following 
Strickland v. Washington
, 466 U.S. 668 (1984), this Court applies a two-part test to evaluate ineffective assistance of counsel claims.  
Heckelsmiller v. State
, 2004 ND 191, ¶ 3, 687 N.W.2d 454.  The test requires the defendant to show that counsel’s representation was objectively unreasonable and that the defendant was prejudiced by counsel’s deficient performance.  
Id.
  The unreasonableness prong requires that a defendant overcome the “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.”  
Id.
 (quoting 
Strickland v. Washington
, 466 U.S. at 689).  The prejudice prong requires proof that, “but for his counsel’s errors, the result of the proceeding would have been different.”  
Id.
 at ¶ 4.  The 
Strickland
 test has been described by this Court as a “heavy, demanding burden.”  
Id.

[¶10] Matters of trial tactics, such as whether to call a certain witness, are not to be second guessed on appeal.  
Mathre v. State
, 2000 ND 201, ¶ 7, 619 N.W.2d 627; 
Stoppleworth v. State
, 501 N.W.2d 325, 328 (N.D. 1993).  This Court’s role is not to superimpose our collective judgment upon that of a trial counsel on a tactical decision as to whether a witness should testify.  
Smith v. Woodley
, 164 N.W.2d 594, 598 (N.D. 1969).  But we have noted that a trial counsel’s failure to have a critical witness testify, coupled with other errors committed by counsel, can result in a denial of effective assistance of counsel.  
Heckelsmiller
, 2004 ND 191, ¶¶ 11-12, 687 N.W.2d 454.  When arguing that it was ineffective representation to fail to call a witness, a defendant must show how any additional witnesses would have aided the defense’s claim.  
Damron v. State
, 2003 ND 102, ¶ 16, 663 N.W.2d 650 (citing 
State v. Wolf
, 347 N.W.2d 573, 575 (N.D. 1984)).

[¶11] Sayler argues that he has met his burden of proof on both prongs of the 
Strickland
 test with respect to both the delivery charge and the acquiring a prescription by deception charge.  According to Sayler, a jury would find him not guilty on both of his charges had a treating physician or nurse practitioner testified at his trial.

[¶12] Sayler’s quixotic argument on his delivery charge is completely without merit.  We do not see how a medical expert’s testimony could have aided a jury’s decision on whether Sayler delivered the prescription medication to Froehlich.  Thus, only Sayler’s charge of acquiring the drug by deception will be analyzed under the two-

prong 
Strickland
 standard.

A.

[¶13] We must first determine whether trial counsel’s failure to call a medical expert as a witness was objectively unreasonable.  Sayler’s trial counsel did not testify at the post-conviction hearing.  Without having trial counsel testify, the district court was left in a difficult position to evaluate whether trial counsel’s decision not to have a treating physician testify was trial strategy or an oversight.  Trial counsel stated his reason for not calling a medical expert in a letter sent to the court after the petition for post-conviction relief was filed.  There is no evidence in Judge Riskedahl’s memorandum opinion that he relied on trial counsel’s letter, and the letter is not part of the evidentiary record in this matter.  Without proper introduction into evidence, neither the trial court nor this Court can consider the assertions in the letter of trial counsel.

[¶14] While there was no direct evidence of trial counsel’s motivation in not calling a medical expert, Judge Riskedahl had ample basis to support his conclusion that an additional witness would not have affected the outcome of the trial.  Judge Riskedahl presided over the trial, reviewed the transcript, and considered additional evidence at the post-conviction hearing before making his decision to deny Sayler’s petition for post-conviction relief.

[¶15] Rud’s testimony at the post-conviction hearing was that a post-operative prescription for Oxycodone is customary following a rotator cuff surgery.  She testified that she always prescribes “at least Percocet or Hydrocodone for post-

operative surgery like [Sayler] had.”  And that “we’ve never performed that surgery and not given somebody a narcotic for at least a month after surgery, or more.”  Rud’s testimony, while informative of typical medical procedure, does not go to the key question on the deception charge.  Assuming the prescription to be medically appropriate and typical under the circumstances, the testimony does not address the element of Sayler’s intent.

[¶16] We have noted the importance of looking to the crime charged to determine whether a witness’s testimony is critical to the outcome of the case.  
Heckelsmiller
, 2004 ND 191, ¶ 12, 687 N.W.2d 454.  Specifically, a witness’s testimony on an essential element of a crime or a defense to a crime can be highly relevant testimony.

[¶17] In 
Heckelsmiller
, the defendant entered into his uncle’s trailer house through a back window and was subsequently arrested and convicted of criminal trespass.  
Id.
  at ¶ 2.  An essential element in the trespass charge was whether the defendant entered into the trailer house knowing that he was not privileged to do so.  
Id.
 at ¶ 12.  We held that the defendant received ineffective assistance of counsel when counsel, changing trial strategies mid-stream, failed to sequester key witnesses in the defendant’s case and failed to make an offer of proof as to what the critical testimony would have been.  The witnesses in 
Heckelsmiller
 would have corroborated the defendant’s testimony that he was privileged to enter his uncle’s trailer house.  We reversed and remanded for a new trial based partly on the failure to call a critical witness, but also due to the combination of trial counsel errors.

[¶18] But in this case there was no offered testimony at the post-conviction hearing on the essential element of Sayler’s intent.  Sayler was charged with acquiring “a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge.”  N.D.C.C. § 19-03.1-25(1)(c).  Although nurse practitioner Rud testified to the normal course of drug prescription following the surgery Sayler had, she did not testify regarding Sayler’s intent to take the drugs or to use them for some other purpose.  Unlike in 
Heckelsmiller
, nurse practitioner Rud’s testimony was not critical to an element of Sayler’s defense.  Thus, we cannot say counsel’s failure to have a medical expert testify was objectively unreasonable.

B.

[¶19] Even assuming the trial counsel’s conduct was objectively unreasonable, Sayler must also show specifically how he was prejudiced and that the outcome of the case would be different absent those perceived errors.

[¶20] The jury in this case had ample evidence to support the conviction. The jury heard testimony from Sayler’s friend Naser that Sayler had an intent to deceive and did not need the prescription.

Q. Did you discuss with him on the trip down the relationship of the pain to the exercises?

A. Mm-hmm.

Q. And what did he say about the pain and his exercises?

A. Well, he said that it was gone, that he wasn’t having any pain any more.

Q. What, if anything, did Bruce Sayler say that he was going to tell the doctor about his pain?

A. He was going to tell him he had pain so he could get another bottle of his pills.

Q. Did you discuss with Bruce Sayler what he was going to do with the pills once he received them?

A. I never asked Bruce, you know.  I never asked him any questions, but, yeah, he told me that he needed some money, and he was going to sell them to Barry.

Q. Did he say what price he hoped to receive for the pills?

A. $5 a pill.

[¶21] Sayler’s lack of need for the prescription is further corroborated by Froehlich pleading guilty to a possession charge and finding Sayler’s prescription at Froehlich’s house in a plastic container hidden on Froehlich’s shelf.

[¶22] Even if the jury heard testimony of nurse practitioner Rud that the prescription was customary following this type of surgery, the jury could still convict Sayler on the deception charge based on the evidence presented at trial.  There was no offer by Sayler that any additional witness would present helpful testimony on his intent.  We cannot say the outcome would be different with the additional testimony of a medical expert describing the typical prescription of pain medication.

III.

[¶23] The district court, concluding Sayler did not receive ineffective assistance of counsel, properly analyzed the 
Strickland
 prongs.  We affirm.

[¶24] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.