2006 ND 216

**Werner RÜMMER, f.k.a. Werner Kunkel, Petitioner and Appellant,**

v.

**STATE of North Dakota, Respondent and Appellee.**

**No. 20050341.**

Supreme Court of North Dakota.

Oct. 17, 2006.

Rehearing Denied Nov. 7, 2006.

Douglas Leo Broden, Devils Lake, N.D., for petitioner and appellant.

Lonnie Olson, State's Attorney, Devils Lake, N.D., for respondent and appellee.

MARING, Justice.

[¶ 1] Werner Rümmer, formerly known as Werner Kunkel, appealed from a district court judgment denying his petition for post-conviction relief. We conclude Rümmer has failed to establish his trial counsel was ineffective, failed to establish the State withheld potentially exculpatory evidence, and failed to establish the State violated his rights under the Vienna Convention on Consular Relations. We affirm.

I

[¶ 2] In 1995, a jury found Rümmer guilty of murdering Gilbert Fassett in Ramsey County. Fassett's body had been found in August 1986 in a wooded area on the Fort Totten Indian reservation. Fassett had been stabbed more than one hundred times. On direct appeal to this Court, Rümmer argued the State presented insufficient evidence to sustain the jury's verdict, claiming the verdict was unsupported by physical evidence or eyewitness testimony and the existing physical evidence pointed to his innocence. *State v. Kunkel*, 548 N.W.2d 773, 773 (N.D. 1996).

[¶ 3] This Court, reviewing the evidence in the light most favorable to the verdict, concluded the jury could reasonably have found:

Kunkel and Fassett were together for a significant amount of time on August 1, 1986, the last day Fassett was seen alive; Fassett was carrying a great deal of money that day; when last seen alive around 10:30 p.m. on August 1, Fassett was with Kunkel; Kunkel was nervous and behaving strangely at the time; Fassett probably died sometime in the late evening of August 1 or early morning of August 2.

*Id.* at 773–74. This Court also concluded that the record clearly demonstrated Rümmer made several admissions implicating himself in Fassett's killing:

> Christopher Anderson testified Kunkel showed him a ring that belonged to Fassett, and said "You see this? You're going to get the same thing that Gilbert got." Mark Demarce testified that Kunkel admitted he killed and mutilated Fassett and dumped Fassett's body on the Fort Totten reservation. Sandra Austin testified that Kunkel admitted "stabbing [Fassett] over and over and over and over." Rodney Maier and Shelley Rutten testified that Kunkel admitted fighting with Fassett and said "the better man won." Nicholas Elston testified that Kunkel admitted stabbing Fassett with the help of a third person. Fred Nakken testified that Kunkel admitted holding Fassett while a third person stabbed Fassett.

*Id.* at 774.

[¶ 4] In affirming Rümmer's conviction, we concluded there was substantial competent evidence to support the jury's verdict finding him guilty of murder and that substantial evidence supported the jury's finding Rümmer murdered Fassett in Ramsey County. *Id.* at 774.

[¶ 5] During Rümmer's trial, the State presented the testimony of Dr. Roel Gallo, a pathologist who performed Fassett's autopsy. Dr. Gallo testified that based upon his observations of the body's decomposition, Fassett's death occurred at least seven or eight days before being found. The State also presented the testimony of Dr. Omer Larson, a zoology professor at the University of North Dakota, who specialized in parasitology and entomology. Dr. Larson testified that maggots removed from the body during the autopsy on August 11, 1986, were between nine and ten days old, which placed the date of larvae

colonization of Fassett's body on either August 1 or August 2, 1986.

[¶ 6] Thereafter, Rümmer sought post-conviction relief under N.D.C.C. ch. 29–32.1. At a hearing on his petition, Rümmer presented the expert testimony of Dr. Neil Haskell, a forensic entomologist. Dr. Haskell testified that Fassett likely died between sunrise on August 3, and sunset on August 6, 1986. The State again called Dr. Larson to rebut the testimony of Dr. Haskell. Rümmer also presented the testimony of four additional witnesses, claiming they established an alibi for him during the time period when Dr. Haskell determined Fassett had died. Rümmer also presented testimony relating to his German citizenship from a representative of the German Consulate in Chicago.

[¶ 7] The district court denied Rümmer's application for post-conviction relief and Rümmer appeals.

## II

[¶ 8] Rümmer argues that he had ineffective assistance of trial counsel.

[¶ 9] Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure. *Flanagan v. State*, 2006 ND 76, ¶ 9, 712 N.W.2d 602. The issue of ineffective assistance of counsel is a mixed question of law and fact and is fully reviewable on appeal. *Klose v. State*, 2005 ND 192, ¶ 10, 705 N.W.2d 809. The district court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). *Laib v. State*, 2005 ND 187, ¶ 11, 705 N.W.2d 845.

[¶ 10] The petitioner has the burden of establishing grounds for post-conviction relief. *Flanagan*, 2006 ND 76, ¶ 10, 712 N.W.2d 602; *State v. Steen*, 2004 ND 228, ¶ 9, 690 N.W.2d 239. In order to

prevail on a post-conviction claim for ineffective assistance of counsel, we have explained the petitioner carries a "heavy burden":

> The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Article I, § 12 of the North Dakota Constitution guarantee a criminal defendant effective assistance of counsel. In accord with the test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 ..., a defendant claiming ineffective assistance of counsel has a heavy burden of proving (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance. "Effectiveness of counsel is measured by an 'objective standard of reasonableness' considering 'prevailing professional norms.'" The defendant must first overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Trial counsel's conduct is presumed to be reasonable and courts consciously attempt to limit the distorting effect of hindsight.
>
> The prejudice element requires a defendant to "establish a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." Not only does a criminal defendant have "the heavy, demanding burden of proving counsel's assistance was ineffective," a defendant claiming ineffective assistance of counsel "must specify how and where trial counsel was incompetent and the probable different result." A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

*Flanagan*, at ¶ 10 (quoting *Heckelsmiller v. State*, 2004 ND 191, ¶¶ 3–4, 687 N.W.2d 454 (citations omitted)). We use the same *Strickland* test to assess ineffective assistance of counsel claims under the state constitution. *Flanagan*, at ¶ 11 (citing *Woehlhoff v. State*, 487 N.W.2d 16, 17 (N.D.1992)).

■ [¶ 11] Rümmer argues his trial counsel was ineffective in failing to adequately investigate various scientific evidence. Rümmer asserts trial counsel inadequately investigated forensic entomological evidence offered by the State to establish the time of Fassett's death and counsel was inadequately prepared to meet that evidence at trial. Rümmer also argues trial counsel inadequately investigated scientific evidence offered by the State to show that a fire in the defendant's car occurring several years after the crime was intentionally set and counsel was inadequately prepared to meet that evidence at trial.

■■ [¶ 12] "A defendant must offer evidence that any additional witnesses would have aided the defense's claim." *Damron v. State*, 2003 ND 102, ¶ 16, 663 N.W.2d 650. We do not second guess matters of trial tactics on appeal, such as whether to call a certain witness. *Sayler v. State*, 2005 ND 166, ¶ 10, 704 N.W.2d 559; *Mathre v. State*, 2000 ND 201, ¶ 7, 619 N.W.2d 627. Strategic choices by trial counsel "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *State v. Schlickenmayer*, 364 N.W.2d 108, 112 (N.D.1985) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).

■■ [¶ 13] "This Court's role is not to superimpose our collective judgment

upon that of a trial counsel on a tactical decision as to whether a witness should testify." *Sayler*, at ¶ 10; *Smith v. Woodley*, 164 N.W.2d 594, 598 (N.D.1969). A trial counsel's failure to have a critical witness testify, coupled with other errors by trial counsel, may result in ineffective assistance of counsel. *Sayler*, at ¶ 10; *Heckelsmiller*, 2004 ND 191, ¶¶ 11–12, 687 N.W.2d 454 (2004). In a case premised on ineffective assistance of counsel, the challenger must identify with specificity or particularity how and where the trial counsel was incompetent and the probable different result. *State v. Wolf*, 347 N.W.2d 573, 575 (N.D.1984). In the absence of a specific showing, we are compelled to reject the contention that trial counsel acted incompetently. *Id.* at 575.

[¶ 14] In this case, the district court found:

> Trial counsel's strategy to minimize the methodology of dating the time of death as anything but science was an appropriate strategy among other alternatives in light of all of the other evidence presented. Even though another attorney may have chosen a different strategy . . ., the strategy used by trial counsel was not a strategy that was below minimal standards.

The court found any failure to further investigate the evidentiary issue and then to bring forward testimony of an independent forensic entomologist and follow-up alibi witnesses would not have avoided other substantial evidence, including Rümmer's confessions and admissions against interest testified to by other witnesses, as well as the testimony by Dr. Gallo. The court thoroughly examined the testimony regarding Rümmer's confessions and statements against interest, finding the common thread that tied them together was that Rümmer admitted to killing or participating in Fassett's homicide with details accurately depicting the circumstances or corroborating events surrounding the murder. The court specifically found that "[t]he evidence of these confessions in the context of other evidence presented was far more damaging to the defendant than other evidence presented including that of Doctor Larson." The court found that, in addition to the testimony provided by Dr. Gallo and Dr. Larson, other evidence also supported an inference that Fassett was killed prior to the time frame suggested by Dr. Haskell.

[¶ 15] From our review of the record, we conclude Rümmer's trial counsel's representation did not fall below an objective standard of reasonableness and Rümmer has simply not demonstrated the testimony of any of his proposed additional witnesses would have changed the result in his criminal trial. Rümmer was not prejudiced by counsel's alleged deficient performance and he has failed to establish ineffective assistance of counsel based upon a failure to investigate.

[¶ 16] Rümmer argues his trial counsel was ineffective in failing to object to evidence offered by the State to show that Fassett did not die where the body was found because the witness offering the testimony was not an expert qualified to give that opinion. Testimony by a law enforcement officer at trial stated that in his opinion Fassett's body was dragged to the place where it was found and that Fassett was killed at another location.

[¶ 17] In *Falcon v. State*, 1997 ND 200, ¶¶ 24–25, 570 N.W.2d 719, this Court, in the context of N.D.R.Ev. 803(2), concluded that because the post-conviction court properly determined evidence would have been admissible over an objection, had one been made, the petitioner was not provided ineffective assistance of counsel.

[¶ 18]  Here, the district court found that if there had been an objection under N.D.R.Ev. 702, the court would have "easily concluded" the witness had the expertise and qualifications to testify by way of his experience and training.  The court found that it was even likely the witness would have been qualified to testify through lay opinion, and that, in any event, under the circumstances and foundation established for the opinions rendered, trial counsel's failure to object was not deficient and did not fall below an objective standard of reasonableness.  The court further stated,

> Even if it may be concluded that the failure on the part of trial counsel to retain the expertise of a forensic entomologist to investigate and to testify at trial, to object to the [expert witness testimony that a fire in Rümmer's car was intentionally set], or to object to the testimony [that Fassett had been killed somewhere else and his body moved], was somehow deficient either individually or together so as to fall below an objective standard of reasonableness, the failure would still not have established prejudice to [Rümmer].

[¶ 19]  We agree there is no reasonable probability that but for any claimed errors, and the new evidence offered, the result of these proceedings would have been different.  Based upon our review of the record, we conclude Rümmer has not demonstrated his trial counsel provided ineffective assistance of counsel.

### III

[¶ 20]  Rümmer argues he is entitled to a new trial because the State withheld potentially exculpatory evidence which was in its possession.  Rümmer asserts the State failed to provide evidence relating to a sworn statement of an individual who had overheard a conversation indicating Fassett had been killed by a law enforcement officer.

[¶ 21]  "In *Brady [v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material to guilt or punishment." *Syvertson v. State,* 2005 ND 128, ¶ 6, 699 N.W.2d 855 (quoting *City of Grand Forks v. Ramstad,* 2003 ND 41, ¶ 9, 658 N.W.2d 731).  To establish a *Brady* violation, the defendant must prove: "(1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed." *Syvertson,* at ¶ 6 (quoting *State v. Goulet,* 1999 ND 80, ¶ 15, 593 N.W.2d 345).

[¶ 22]  The district court found that the sworn statement was hearsay, speculative, and lacked credibility, particularly in terms of detail.  The court further found that even without disclosure of the statement, the underlying claim that Fassett had been killed by another person was well known, and the defendant and his trial counsel were aware of the rumors relating to this allegation.  Exhibits and police reports containing variations of the claim had been provided to Rümmer prior to trial.  The court found the additional sworn statement made by an individual in an earlier and unrelated proceeding would not have made any probable difference in the outcome of the case.

[¶ 23]  We agree with the findings and analysis of the district court on this issue.  Rümmer has failed to establish the initial element of a *Brady* violation in that the sworn statement would have been favor-

able to Rümmer considering what had already been provided and was known at the time of trial. Further, we conclude the outcome of the proceedings would not have been different even if the evidence had been disclosed. We conclude Rümmer failed to establish a *Brady* violation.

## IV

■■■ [¶ 24] Rümmer argues the State violated his rights as a German national to have the assistance of the German Consulate General as provided by Article 36 of the Vienna Convention on Consular Relations.

[¶ 25] Relying on *Breard v. Greene*, 523 U.S. 371, 377, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), the district court found Rümmer had failed to meet his burden that he had been prejudiced by not being given notice of his rights under Article 36 of the Vienna Convention. Specifically, the district court found that Rümmer had been raised and educated in the United States and in North Dakota since his early childhood and was fluent in English, that Rümmer was familiar with the North Dakota criminal court system based upon his many prior criminal convictions and prosecutions, that Rümmer had already been assigned legal counsel and was not denied access to legal advice or assistance, that none of the services or benefits which could have been provided by the German consulate were relevant to Rümmer's circumstances, and that the absence of the services demonstrated no prejudice to Rümmer. The court also questioned Rümmer's credibility on this issue because he was the only one who actually knew he was a foreign national. The court concluded Rümmer should not be allowed to gain by his failure to disclose his status as a foreign national until post-trial, post-conviction, and post-appeal.

[¶ 26] In *Sanchez–Llamas v. Oregon*, —— U.S. ——, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006), the United States Supreme Court recently addressed a similar situation under the Vienna Convention on Consular Relations. In *Sanchez–Llamas*, one of the petitioners was a Honduran national who was arrested and charged with murder; however, police never informed him that he could request the Honduran Consulate be notified of his detention. *Id.* at 2676–77. The Honduran national was ultimately convicted and sentenced to prison in state court, and his conviction and sentence were affirmed on appeal. *Id.* The Honduran national then filed a habeas petition in Virginia state court arguing for the first time that authorities had violated his Article 36 right to consular notification. *Id.* The state court dismissed his claim as procedurally barred because he had failed to raise it at trial or on appeal, and the Supreme Court of Virginia found no reversible error. *Id.*

[¶ 27] The Supreme Court declined to address whether Article 36 of the Vienna Convention granted enforceable rights that may be invoked by individuals in judicial proceedings. *Id.* at 2677–78. However, the Supreme Court concluded, even assuming the Convention creates judicially enforceable rights, a State may apply its regular rules of procedural default to Article 36 claims. *Id.* at 2674, 2687. The Supreme Court stated that the petitioner "asks us to require the *States* to hear Vienna Convention claims raised for the first time in *state* postconviction proceedings. Given that the Convention itself imposes no such requirement, we do not perceive any grounds for us to revise state procedural rules in this fashion." *Id.* at 2687 (emphasis in original). The Supreme Court concluded, "as [it] did in *Breard*, [523 U.S. 371, 118 S.Ct. 1352 (1998),] that claims under Article 36 of the Vienna Convention may be subjected to the same pro-

cedural fault rules that apply generally to other federal-law claims." *Sanchez–Llamas,* at 2687.

[¶ 28] We have previously stated, " 'Issues not raised by an applicant for post-conviction relief during the criminal trial, sentencing, on direct appeal, or in prior applications for post-conviction relief are properly dismissed for abuse of process, absent any showing of excuse for failure to timely raise such issues.' " *Roth v. State,* 2006 ND 106, ¶ 8, 713 N.W.2d 513 (quoting *Greybull v. State,* 2004 ND 116, ¶ 5, 680 N.W.2d 254). Rümmer did not raise his claims under Article 36 of the Vienna Convention in his prior criminal trial, or in his previous direct appeal. *See Kunkel,* 548 N.W.2d 773. Rümmer is, therefore, precluded from raising this issue in his post-conviction proceeding.

[¶ 29] We hold that Rümmer's failure to raise this issue in his prior criminal proceedings bars raising the issue in his subsequent post-conviction relief proceeding.

### V

[¶ 30] We have considered the remaining issues and arguments raised by Rümmer. They are either without merit or unnecessary to our decision. The district court judgment denying Rümmer's application for post-conviction relief is affirmed.

[¶ 31] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.