2007 ND 30

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Shawn David AUSTIN, Defendant and Appellant.**

**Shawn David Austin, Petitioner and Appellant,**

v.

**State of North Dakota, Respondent and Appellee.**

Nos. 20060022, 20060194.

Supreme Court of North Dakota.

Feb. 28, 2007.

Rehearing Denied March 22, 2007.

Benjamin C. Pulkrabek, Mandan, N.D., for appellant.

Ladd R. Erickson, State's Attorney, Washburn, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Shawn Austin appeals from a judgment entered after a jury found him guilty of gross sexual imposition and from an order denying his petition for post-conviction relief. We affirm.

I

[¶ 2] In January 2005, Austin was charged with gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a) for allegedly engaging in sexual contact with his former girlfriend's niece, D.L., who was under fifteen years of age.

[¶ 3] Before trial, Austin moved for leave to present expert testimony from Dr. Edward Kehrwald, a psychologist who conducted a psychological examination of Austin. At a hearing to decide the admissibility of the proffered testimony, Dr. Kehrwald testified about the results of Austin's psychological examination. The psychological examination included administration of the Abel Assessment of Sexual Interest, which attempts to ascertain the subject's sexual interests. Dr. Kehrwald's proffered testimony explained that the results from the Abel Assessment showed Austin had no interest in younger females, and provided Dr. Kehrwald's opinion about how child custody disputes may influence false sexual abuse allegations. The district court denied Austin's motion, finding the proffered expert testimony would not assist the jury in understanding any evidence or in deciding whether or not Austin committed the offense.

[¶ 4] At trial, D.L. testified Austin sexually abused her five times when she was ten and eleven years old. D.L. testified the incidents occurred in various locations at Austin's house, including on the roof, in a pickup truck parked in the yard, on the couch, and in a room containing multiple computers. The State introduced a videotape of D.L. talking about the allegations during a forensic interview. McLean County Sheriff's Deputy Sylvin Brunsell testified about law enforcement's investigation, including an interview with Austin in which he admitted touching D.L. and made other incriminating statements. Austin also testified at trial and denied D.L.'s allegations, but said it was possible he may have accidentally touched D.L. while they were wrestling. Austin claimed D.L. may have conspired with her mother or with Austin's girlfriend, D.L.'s aunt, to fabricate the allegations to assist Austin's girlfriend in possible child custody proceedings against Austin. Austin also testified that many of the alleged instances of abuse could not have occurred, specifically the incidents in the pickup truck because two windshields and various other automobile parts were in the pickup truck's cab, which would have made it impossible for two people to get inside the vehicle. The jury found Austin guilty, and he was sentenced to five years' imprisonment with three years suspended. Austin appealed the criminal judgment, and the appeal was stayed pending a post-conviction proceeding.

[¶ 5] In April 2006, Austin applied for post-conviction relief, arguing his trial counsel was ineffective and he did not receive a fair trial because the district court judge made improper or coercive remarks to the jury during deliberations. After a post-conviction hearing, the district court denied Austin's application. Austin appealed the district court's order denying

his application for post-conviction relief, and his appeals were consolidated.

[¶ 6] The district court had jurisdiction of the criminal proceeding under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal from the criminal judgment was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

[¶ 7] The district court had jurisdiction of the post-conviction proceeding under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 29–32.1–03. The appeal from the order denying Austin's post-conviction relief was timely under N.D.R.App.P. 4(d), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–32.1–14.

## II

[¶ 8] Austin argues the district court abused its discretion in excluding Dr. Kehrwald's proffered testimony. He claims Dr. Kehrwald's proffered testimony met the admissibility requirements for expert testimony and would have assisted the jury in deciding the probability that Austin would assault a young female and the probability that someone would fabricate a story about sexual abuse to gain an advantage in a custody dispute.

[¶ 9] Introduction of expert testimony is governed by N.D.R.Ev. 702, which allows expert testimony to be used when it assists the trier of fact:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"Although expert testimony is admissible whenever specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, whether expert testimony is useful falls within the [district] court's sound discretion." *Praus v. Mack*, 2001 ND 80, ¶ 34, 626 N.W.2d 239 (citation omitted). Expert testimony is not admissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.*

[¶ 10] The court's decision whether to allow expert testimony will not be overturned on appeal unless the court has abused its discretion. *Id.* A district court abuses its discretion when " 'it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.' " *State v. Schmidkunz*, 2006 ND 192, ¶ 15, 721 N.W.2d 387 (quoting *Nesvig v. Nesvig*, 2006 ND 66, ¶ 12, 712 N.W.2d 299).

[¶ 11] Austin moved for leave to present expert testimony from Dr. Kehrwald, who had conducted a psychological evaluation of Austin. The evaluation included the Abel Assessment of Sexual Interest, which is used to ascertain an individual's sexual interests. Dr. Kehrwald testified that Austin's results on the Abel Assessment showed an interest in adult females and adolescent females, with no interest in children, which are typical results for an adult male. Austin argued Dr. Kehrwald's testimony was admissible to show Austin does not have a sexual interest in children. Austin claimed the information about his sexual interests would help the jury decide the probability that Austin would assault a young female. Austin argued the evidence would be presented only as character evidence and would not be used to infer Austin's guilt or innocence.

[¶ 12] The district court excluded Dr. Kehrwald's proffered testimony, finding:

1. The Defendant is not accused of being a pedophile, but rather having committed or engaged in a sexual act with a minor child.

2. The psychological tests employed by Dr. Kehrwald in his evaluation of the defendant are not intended to be employed for the purpose of determining whether or not the Defendant committed the alleged act.

3. The expert opinion and evaluation as prepared by Dr. Kehrwald is of no probative value to the jury in its determination of whether or not the Defendant committed the alleged crime.

4. The jury is able to make a factual determination of the Defendant's guilt or innocence in the above-entitled prosecution absent expert testimony of the Defendant's character trait of sexual interest in children.

5. The Defendant's character traits are not an element of the alleged offense.

The court also found Dr. Kehrwald acknowledged the tests "do not address nor are they to be employed to determine a patient's predisposition to engage in particular conduct, and therefore should not be considered in a determination of whether or not the accused committed the alleged act." During the pre-trial hearing, the court expressed its concern that the jury would use in the information to infer Austin's guilt or innocence, and would not limit its use to character evidence. The court concluded: "While Dr. Kehrwald's testimony may be extremely valuable to the Court should the Defendant be convicted of the alleged gross sexual imposition, it does not assist the trier of fact, the jury, to understand any evidence nor to determine whether or not the Defendant committed the alleged offense."

[¶ 13] We conclude the district court's explanation for excluding Dr. Kehrwald's testimony was the product of a rational mental process and the court's decision was not arbitrary, unreasonable, or unconscionable.

[¶ 14] Austin also offered expert testimony from Dr. Kehrwald about whether a person involved in a custody proceeding would make up a story about sexual abuse to gain an advantage. Austin claimed D.L. was fabricating the allegations to help her aunt, who was Austin's girlfriend at the time of the allegations and has two children with him, in a possible future child custody dispute. Dr. Kehrwald testified he is more cautious when he conducts assessments if he is aware that a child custody proceeding may be motivating the allegations.

[¶ 15] The district court excluded Dr. Kehrwald's custody testimony, finding expert testimony was not necessary to tell a jury that a custody battle may be a motivational factor in sexual abuse allegations because the proffered testimony was generic and did not require any expertise. The court found there was no foundation for Dr. Kehrwald's opinion about a possible child custody proceeding motivating the allegations in this case, because Dr. Kehrwald only spoke to Austin and did not know anything more about custody and its impact in this case than he would in any other case.

[¶ 16] We conclude the court did not abuse its discretion in excluding Dr. Kehrwald's custody testimony. The court found the testimony was generic and did not require any specialized knowledge or expertise. Austin presented similar testimony at trial when he testified that he believed D.L. fabricated the allegations to help her aunt with a possible child custody proceeding against Austin. The court's decision was the product of a rational men-

tal process leading to a reasoned decision, and was not arbitrary, unreasonable, or unconscionable.

[¶ 17] We conclude the district court did not abuse its discretion in excluding Dr. Kehrwald's proffered testimony.

### III

[¶ 18] During jury deliberations, the jury requested transcripts of Austin's and Deputy Brunsell's testimony. The district court allowed the witnesses' entire testimony to be read to the jury, and said, "Ladies and gentlemen of the jury, you would not normally receive this testimony. By virtue of the nature of the case, I granted this latitude and that's all the transcripts and all the reading you'll receive." Austin claims this statement to the jury was an incorrect statement of the law, and constituted an obvious error that had a significant impact on the verdict.

■ [¶ 19] The district court must allow a jury to rehear any testimony requested. N.D.C.C. § 29–22–05; *State v. Jahner*, 2003 ND 36, ¶ 6, 657 N.W.2d 266. While the district court's statement to the jury was incorrect, Austin failed to object to the statement. Defendants who seek " 'to take advantage of irregularities occurring during the course of a trial, either on the part of the court, the jury, the adverse parties, or anyone acting for or on their behalf, ... must do so at the time the irregularities occur, in order that the court may take appropriate action, if possible, to remedy any prejudice.' " *Jahner*, at ¶ 9, 657 N.W.2d 266 (quoting *Leake v. Hagert*, 175 N.W.2d 675, 690 (N.D.1970)). Because Austin did not object to the court's statements, our review is for obvious error under N.D.R.Crim.P. 52(b). *See State v. Jacob*, 2006 ND 246, ¶ 14, 724 N.W.2d 118.

In determining whether there has been obvious error, we examine the entire record and the probable effect of the alleged error in light of all the evidence,

and the burden is upon the defendant to show the alleged error was prejudicial. An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law.

*Id.* (quoting *State v. Weaver*, 2002 ND 4, ¶ 17, 638 N.W.2d 30). The Court will notice obvious error only in exceptional circumstances when the defendant has suffered a serious injustice. *Schmidkunz*, 2006 ND 192, ¶ 6, 721 N.W.2d 387.

■ [¶ 20] In this case, the jury did not ask to rehear any other testimony, and it is not clear that the jury was denied access to re-examine any evidence or testimony. Austin has not demonstrated that he suffered a serious injustice or prejudice, and therefore we conclude the court's incorrect statement to the jury does not constitute obvious error.

### IV

[¶ 21] Austin argues the court made improper or coercive remarks to the jury encouraging them to find him guilty. After several hours of deliberations, the court asked the jury members if they would be able to reach a decision or if they were at an impasse:

Ladies and gentlemen of the jury, I cause you to be returned to inquire as to whether or not you have reached an impasse in the matter. Your deliberations commenced at 10:10 this morning. There is no physical evidence to examine; accordingly, I don't want to waste your time or anyone else's if you are at an impasse.... Are you at an impasse?

The jury foreman informed the court they were still discussing the matter, and the court responded, "I understand that. Let me inquire of the jury. If you wish to continue your deliberations, raise your right hand?" The jurors raised their

hands and were allowed to continue deliberations.

**■■■■■ [¶ 22]** Because Austin did not object to the court's remarks, our review of this issue is also for obvious error. "The test generally applied to determine if remarks by the court to the jury are improper or coercive . . . is to examine them in light of the totality of the circumstances to see if they had a coercive effect on the jury." *State v. Hartsoch,* 329 N.W.2d 367, 371 (N.D.1983). Although the court's remarks may have been improper, we conclude the remarks did not harm Austin. The court's comments are in Austin's favor, and the jury was allowed to continue deliberating. We conclude the court's comments did not have a coercive effect on the jury and were not obvious error.

## V

**[¶ 23]** Austin claims the district court erred in denying his motion for a judgment of acquittal, because there was insufficient credible evidence to sustain his conviction.

**■■■■■ [¶ 24]** Austin timely moved for an acquittal under N.D.R.Crim.P. 29, preserving the issue of sufficiency of the evidence for appellate review. *Jacob,* 2006 ND 246, ¶ 6, 724 N.W.2d 118. On appeal, the defendant must show that the evidence, viewed in the light most favorable to the verdict, permits no rational factfinder to find the defendant guilty beyond a reasonable doubt. *Id.*

**[¶ 25]** The jury found Austin guilty of gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a), which states a person who engages in sexual contact with someone less than fifteen years old is guilty of an offense. Sexual contact is "any touching, whether or not through the clothing or other covering, of the sexual or other intimate parts of the person . . . for the purpose of arousing or satisfying sexual or aggressive desires." N.D.C.C. § 12.1–20–02(4).

**■■■ [¶ 26]** D.L. testified Austin touched her vagina and breasts on several occasions, and he digitally penetrated her vagina during the last incident. A videotape of D.L.'s forensic interview was shown to the jury. Deputy Brunsell also testified that Austin admitted touching D.L. and made other incriminating statements during an interview. The evidence, when viewed in a light most favorable to the verdict, supports the jury's verdict, and therefore we conclude the court did not err in denying Austin's motion for acquittal.

## VI

**[¶ 27]** Austin argues the district court erred in denying his application for postconviction relief. He claims he was deprived of his Sixth Amendment right to effective assistance of counsel because his attorney made unprofessional errors that affected the outcome of the proceeding.

**■■■■ [¶ 28]** Proceedings for postconviction relief are civil in nature and are governed by the North Dakota Rules of Civil Procedure. *Flanagan v. State,* 2006 ND 76, ¶ 9, 712 N.W.2d 602. The issue of ineffective assistance of counsel is a mixed question of law and fact that is fully reviewable on appeal. *Klose v. State,* 2005 ND 192, ¶ 10, 705 N.W.2d 809.

**■■■■ [¶ 29]** A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment of the United States Constitution and N.D. Const. art. I, § 12. *Wright v. State,* 2005 ND 217, ¶ 10, 707 N.W.2d 242. Our standard for assessing a claim of ineffective assistance of counsel is well-established:

> In accord with the test established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 . . . (1984), a defendant claiming ineffective

assistance of counsel has a heavy burden of proving (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance. "Effectiveness of counsel is measured by an 'objective standard of reasonableness' considering 'prevailing professional norms.'" The defendant must first overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Trial counsel's conduct is presumed to be reasonable and courts consciously attempt to limit the distorting effect of hindsight.

The prejudice element requires a defendant to "establish a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." Not only does a criminal defendant have "the heavy, demanding burden of proving counsel's assistance was ineffective," a defendant claiming ineffective assistance of counsel "must specify how and where trial counsel was incompetent and the probable different result." A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

*Flanagan,* 2006 ND 76, ¶ 10, 712 N.W.2d 602 (quoting *Heckelsmiller v. State,* 2004 ND 191, ¶¶ 3–4, 687 N.W.2d 454 (citations omitted)).

[¶ 30] Austin claims his trial counsel made multiple unprofessional errors that affected the outcome of the proceeding. While Austin's trial counsel did not testify at the post-conviction hearing, Austin presented testimony from Attorney Todd Schwarz. Austin contends his trial counsel was surprised by D.L.'s allegation that one incident occurred on the roof of the house, and he argues that if his trial counsel had been properly prepared for the trial, which in Attorney Schwarz's opinion would have included deposing D.L. and hiring a private investigator to investigate the allegations, he would have known about the roof allegation and could have effectively cross-examined D.L. Austin alleges his trial counsel could have used the information from the roof allegation to effectively attack D.L.'s credibility by showing the incident could not possibly have occurred, which would have resulted in a different outcome in the proceeding. Attorney Schwarz testified he advised Austin's trial counsel to depose D.L. and to hire a private investigator, but he also testified he had been unsuccessful in getting leave from the court to depose a victim in similar cases. Austin also contends his trial counsel failed to properly prepare for the trial because he did not investigate D.L.'s allegation that two incidents occurred in a pickup truck. At trial Austin testified it was not possible for any of the incidents to have occurred in the pickup truck because the cab of the truck was full of spare automobile parts, including two windshields, which made it impossible for two people to get inside the vehicle. Austin claims that if his attorney had investigated the pickup truck, including having pictures of the vehicle, he would have been able to effectively attack D.L.'s credibility. Austin argues his trial counsel erred by failing to object to hypothetical questions and by failing to investigate whether D.L. had been coached. Austin also contends his trial counsel erred by failing to object to the court's remarks to the jury that they would not be read any more of the transcripts and inquiring whether the jury was at an impasse during deliberations.

[¶ 31] The district court found Austin's trial counsel was prepared for trial as evidenced by the numerous pretrial motions and hearings. The court also found that many of the alleged errors could be attrib-

uted to trial tactics. The court concluded Austin could not satisfy the burden of proof for a claim of ineffective assistance of counsel and denied his application.

[¶ 32]  We will not disturb the district court's findings of fact in post-conviction proceedings unless they are clearly erroneous. *Flanagan*, 2006 ND 76, ¶ 9, 712 N.W.2d 602. The evidence supports the court's findings that Austin's counsel was adequately prepared for the trial and that the errors Austin claims his counsel committed are attributable to trial tactics. On appeal, we do not second-guess matters of trial tactics, such as the decision whether to attempt to depose a witness, hire a private investigator, or how to question a witness. *See Rummer v. State*, 2006 ND 216, ¶ 12, 722 N.W.2d 528. "Strategic choices by trial counsel 'made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (quoting *State v. Schlickenmayer*, 364 N.W.2d 108, 112 (N.D.1985)).

[¶ 33]  Moreover, Austin failed to establish that his trial counsel's alleged deficient performance affected the outcome of the case. D.L. alleged Austin abused her on five occasions. The jury only had to find that one incident occurred. Austin failed to establish a reasonable probability that the outcome of the proceeding would have been different if Austin's trial counsel had tried to depose D.L., hired a private investigator, and attacked D.L.'s credibility.

[¶ 34]  After reviewing the record, we conclude Austin's trial counsel's representation did not fall below an objective standard of reasonableness, and even if Austin's trial counsel was deficient, Austin has failed to establish that the outcome of his criminal trial would have been different.

## VII

[¶ 35]  We affirm the judgment and the order denying Austin's application for post-conviction relief.

[¶ 36] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.