2007 ND 122

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Jodi Rae SCHWEITZER, Defendant and Appellant.**

No. 20060243.

Supreme Court of North Dakota.

July 25, 2007.

Jodi Bass (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, and Deborah Louise Garner (appeared), Assistant State's Attorney, Grand Forks, N.D., for plaintiff and appellee.

Larry James Richards, Grand Forks, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Jodi Rae Schweitzer appeals from a criminal judgment entered after a jury convicted him of aggravated assault. We affirm, concluding the district court did not abuse its discretion in admitting certain testimony as an excited utterance, sufficient evidence exists to sustain the conviction, and the record on appeal does not support Schweitzer's claim that he received ineffective assistance of trial counsel.

I

[¶ 2] In December 2005, Laurie Stamness suffered a broken and dislocated jaw, a broken nose, and a laceration under her lip. Schweitzer and Stamness had been consuming alcohol and arguing at the home of Schweitzer's ex-girlfriend, Dawn Standing Chief. After sustaining the injuries, Stamness went to her home and sought treatment for her injuries the following morning. While receiving treatment at the hospital, Stamness gave a written statement to Grand Forks police that Schweitzer had assaulted her.

[¶ 3] Schweitzer was charged with aggravated assault under N.D.C.C. § 12.1-17-02. During an August 2006 jury trial, Stamness testified that she and Schweitzer were in a dating relationship on the evening she was injured and that she, Schweitzer, Standing Chief, and Dennis Hanson had been drinking at Standing Chief's apartment. At trial, Stamness testified she and Schweitzer were still dating, and she was reluctant to testify against him. Stamness nevertheless testified she had argued with Schweitzer on the night of her injuries and as she was leaving Standing Chief's apartment, she turned away and remembered she had left her purse and eyeglasses "in the kitchen area or somewhere" when someone assaulted her by striking her in the nose and face. Stamness testified at trial that she did not see who had struck her. Stamness said she then walked home and recalled that her sons were there when she walked in the door, but she did not recall her conversation with them. She was taken to the emergency room the next day by her sister, Nancy Johnson. Stamness testified that while in the emergency room she gave a written statement that Schweitzer had assaulted her to Grand Forks Police Officer Jennifer Lammers. On cross-examination, however, Stamness also acknowledged that she later told someone she thought she could have fabricated the story because she was angry with Schweitzer.

[¶ 4] Nancy Johnson testified that in a telephone call from Stamness's son, whom she described as "extremely upset," she learned about the assault approximately two hours after it had occurred. Over defense counsel's hearsay objection, Johnson testified that Stamness's son told her "the bastard broke her nose," referring to Schweitzer. Johnson also testified Stamness told her that Schweitzer had assaulted her.

[¶ 5] Officer Lammers testified Stamness had told her Schweitzer had grabbed her when she tried to leave Standing Chief's residence and started hitting her. Officer Lammers testified Stamness said Schweitzer had kicked her in the face with his steel-toed boots while she was on the ground. Officer Lammers also testified

Stamness had given a contemporaneous written statement and it was common for victims of domestic violence to recant or change their stories.

[¶ 6] Standing Chief testified she had heard a commotion in another room, but she did not see who assaulted Stamness. Standing Chief's testimony reflects that she observed Schweitzer and Stamness arguing just before the assault and observed Stamness's condition immediately following the commotion. Standing Chief does not suggest someone else was present during the commotion, and she denied having caused the injuries to Stamness. Troy Peterson, M.D., an oral maxillofacial surgeon, testified Stamness was referred to him "by the emergency room" for evaluation of possible jaw and nose fractures. Dr. Peterson's examination revealed Stamness had sustained a nasal fracture, jaw fracture, and tooth fracture, in addition to a laceration associated with the fractured tooth. Dr. Peterson testified he treated her for the nasal and jaw fractures. Dr. Peterson testified Stamness's injuries were consistent with someone's having been punched or kicked in the face. Dr. Peterson also testified, over defense counsel's objection, that Stamness had told him during the examination that her injuries were the result of being assaulted by her boyfriend.

[¶ 7] After presenting Dr. Peterson's testimony, the State rested. Schweitzer did not call any witnesses, but moved for a judgment of acquittal. The district court denied Schweitzer's motion, concluding there was sufficient evidence to submit the case to the jury. The jury found Schweitzer guilty of aggravated assault.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal from the criminal judgment was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

[¶ 9] Schweitzer contends the district court erred in allowing hearsay testimony to be admitted into evidence as an excited utterance. Nancy Johnson testified she found out about her sister's assault shortly after it occurred. At trial, Johnson testified that Stamness's oldest son had called her and was quite upset upon seeing his mother after she was assaulted:

Q  And when did he call you?

A  Approximately an hour and a half to two hours after what happened.

Q  What was his state of mind at the time that he had called you?

A  He was extremely upset. His—very extremely upset. He said his mom was bleeding—

THE COURT: Just—not what he said just what was his state of mind.

THE WITNESS: Severely upset.

Q  (Ms. Garner continuing) And what did he tell you had happened?

MR. SORENSEN: Objection, Your Honor, that would be hearsay.

THE COURT: I'm going to overrule the objection. I believe it qualifies as an excited utterance. Please proceed.

Q  (Ms. Garner continuing) What did he tell you had happened?

A  The first thing he said was "the bastard broke her nose".

Q  And who was he referring to?

A  Jodi Schweitzer.

Q  What did you do next?

A  I said who? Who broke her nose? And he said Jodi broke my mom's nose, and of course, I said what, you know, I was so—

Q  What did you do next?

A  I called the police.

[¶ 10] "We review a district court's evidentiary ruling under an abuse-of-discretion standard." *State v. Streeper*, 2007 ND 25, ¶ 11, 727 N.W.2d 759. A district court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably, or if it misinterprets or misapplies the law. *State v. Mulske*, 2007 ND 43, ¶ 5, 729 N.W.2d 129.

[¶ 11] Rule 803(2), N.D.R.Ev., provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The proponent of the evidence has the burden of establishing the foundational facts to make a statement admissible as an 'excited utterance' exception to the hearsay rule." *State v. Whalen*, 520 N.W.2d 830, 832 (N.D.1994); *see also Staiger v. Gaarder*, 258 N.W.2d 641, 647 (N.D.1977). The foundational facts must show: (1) a startling event or condition; and (2) the statement is the product of the declarant's stress or excitement resulting from the startling event or condition. *Falcon v. State*, 1997 ND 200, ¶ 23, 570 N.W.2d 719; *Whalen*, at 832.

[¶ 12] Johnson's testimony establishes that Stamness's son was "extremely upset" when he saw his mother bleeding. The startling event or condition here is Stamness's physical condition after having been assaulted. Johnson's testimony regarding the statement by Stamness's son reflects the son's stress and excitement when he saw his mother. Although Schweitzer argues Johnson's testimony about the son's statement is not admissible as an "excited utterance" because the son did not have personal knowledge of the assault, the startling event or condition affecting Stamness's son was not observing the assault, but was seeing his mother arriving home bloodied shortly after having been assaulted. We conclude the district court did not abuse its discretion in permitting Johnson to testify regarding the son's statement under the "excited utterance" hearsay exception in N.D.R.Ev. 803(2).

[¶ 13] Schweitzer's argument about the son's lack of personal knowledge, however, does suggest an issue of "hearsay within hearsay" or double hearsay. Under N.D.R.Ev. 805, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these Rules." *See also State v. Lefthand*, 523 N.W.2d 63, 68–69 (N.D.1994) (offered private investigator testimony was classic example of hearsay-within-hearsay and was properly excluded); *Hirschkorn v. Severson*, 319 N.W.2d 475, 478 n. 5 (N.D.1982) (probable "hearsay-within-hearsay" question noted but declining to address it because parties did not raise the question on appeal).

[¶ 14] Johnson's testimony does not establish how Stamness's son learned that Schweitzer had assaulted his mother. Johnson's testimony is silent as to whether Stamness told her son that Schweitzer had assaulted her, whether the son assumed his mother's assailant was Schweitzer, or whether he came to this conclusion by some other means. Schweitzer asserts there is no dispute that Stamness's son did not see his mother's assault. Although we have sustained the district court's ruling that Johnson's testimony regarding Stamness's son's statement was an "excited utterance," the son's identification of Schweitzer as his mother's assailant was allowed without further factual foundation as to how Stamness's son knew who had assaulted his mother. There was, however, substantial other testimony presented

at trial that plainly identified Schweitzer as the assailant and that was admitted into evidence without objection. We conclude any potential error in admitting the son's identification was harmless.

[¶ 15]   Johnson testified that while she was helping her sister get medical treatment the following morning, Stamness told her Schweitzer had assaulted her. There is also testimony from both Officer Lammers and Dr. Peterson indicating that Stamness identified Schweitzer as her assailant. Although Schweitzer's hearsay objection at trial could have been more specific as to the "hearsay within hearsay" issue and Schweitzer has not specifically identified the "hearsay within hearsay" issue on appeal, to the extent that Schweitzer's argument regarding Stamness's son's apparent lack of personal knowledge of the assault raises this issue, we conclude any potential error does not affect Schweitzer's substantial rights and was harmless under N.D.R.Crim.P. 52(a). We therefore conclude the district court did not abuse its discretion in admitting into evidence Johnson's testimony regarding the statement of Stamness's son.

### III

[¶ 16]   Schweitzer argues there was insufficient evidence to sustain his conviction.

[¶ 17]   Schweitzer timely moved for a judgment of acquittal under N.D.R.Crim.P. 29, thus preserving the issue of sufficiency of the evidence for appellate review. *State v. Austin*, 2007 ND 30, ¶ 24, 727 N.W.2d 790. Our standard of review of a sufficiency of the evidence claim gives deference to the jury's verdict. *State v. Jacob*, 2006 ND 246, ¶ 6, 724 N.W.2d 118; *Austin*, at ¶ 24. "This Court will reverse a conviction on the ground of insufficient evidence only if, after viewing the evidence and all reasonable inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Steen*, 2000 ND 152, ¶ 17, 615 N.W.2d 555.

[¶ 18]   Here, the jury found Schweitzer guilty of aggravated assault under N.D.C.C. § 12.1–17–02, which, in part, states: "A person is guilty of a class C felony if that person: 1. Willfully causes serious bodily injury to another human being. . . ." Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, permanent loss or impairment of the function of any bodily member or organ, or a bone fracture." N.D.C.C. § 12.1–01–04(29).

[¶ 19]   Schweitzer essentially argues there is insufficient evidence to sustain his conviction for aggravated assault because Stamness testified at trial that she did not know who had assaulted her. Schweitzer asserts the only other testimony identifying him as the assailant came from witnesses who were told of the "false account" by Stamness. Schweitzer also maintains much of the testimony provided by those witnesses is inadmissable hearsay.

[¶ 20]   Here, there was sufficient testimony admitted without objection that identified Schweitzer as Stamness's assailant. In addition to the previously discussed testimony of Johnson, Officer Lammers, and Dr. Peterson, Dawn Standing Chief was present the night of the assault and testified at trial. Standing Chief, who was Schweitzer's ex-girlfriend and who had four children with Schweitzer, testified Schweitzer and Stamness were drinking at her apartment when Standing Chief returned home from work, and she starting

drinking with them after putting her son to bed:

Q Do you recall the incident that took place on December 10th, 2005?

A Yes.

Q And where were you that night?

A At my apartment.

Q Did you see Mr. Schweitzer and Laurie Stamness?

A Yes.

Q Where did you see them?

A They were at my apartment when I returned home from work.

Q What happened that evening at your apartment?

A When I got home they—well, Jodi, had, had my son, our son. He was watching him overnight and they brought them back. When I got home from work they were there, they were drinking.

Q Were people intoxicated?

A Yes.

Q What happened later?

A Okay. Well, I put my son to bed and I started drinking with them, with him and Laurie. And she—well, Jodi was making remarks to me like, he'd say, honey, or I mean Dawn, he'd correct himself, and she would get very angry about that and she, she would grab his hair and pull his hair and he would get up and my brother was also there. And he got up, he told them if you guys are going to fight, you guys have to leave and so they settled down. And then it started again when—

Q You say they settled down, Jodi and Laurie Stamness?

A And Laurie, yeah. And then later on about, within like 10 more minutes he was saying, he was making more remarks to me saying you broke my heart and I still love you, though, and stuff and she would get mad again and she grabbed him by the balls. And he got up again like he's going to push her away and my brother had told them again, you guys, last time, you guys do it again, you have to leave.

And so they knocked—they quit again. And my brother had got, had left to his friends, it was a neighbor. He got up and he left and I went into the bathroom and when I came out Jodi was walking into the hallway towards the bathroom and Laurie had followed him and I went back and I sat back in the kitchen in my apartment and they started arguing.

Q And is that when the assault occurred?

A I believe so.

Q Did you see the assault?

A No, I didn't. I just, I heard a commotion and I looked and Laurie was coming back into my living room from the hallway and she, she just like dropped to her knees and she had a bloody nose.

Q And you didn't—you did not assault Laurie Stamness?

A No, I didn't.

[¶ 21] Standing Chief's testimony establishes that Schweitzer and Stamness were arguing before the assault took place, and although Standing Chief did not see the assault, she saw Schweitzer walk into a hallway toward the bathroom and Stamness follow him. Further, Standing Chief testified that her brother had left the residence and that she did not assault Stamness. Despite Stamness's lack of recollection of her assailant at trial, Standing Chief's testimony supports a reasonable inference for the jury to conclude Schweitzer assaulted Stamness. The evidence, when viewed in a light most favorable to

the verdict, supports the jury's verdict, and we therefore reject Schweitzer's claim that there was insufficient evidence to sustain his conviction.

## IV

[¶ 22] Schweitzer contends he received ineffective assistance of trial counsel. He argues his trial counsel's representation was plainly defective and affected the ultimate result at trial.

[¶ 23] "A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment of the United States Constitution and N.D. Const. art. I, § 12." *Austin,* 2007 ND 30, ¶ 29, 727 N.W.2d 790. On appeal, whether a defendant has received ineffective assistance of counsel is a mixed question of law and fact that is fully reviewable. *Id.* at ¶ 28; *Klose v. State,* 2005 ND 192, ¶ 10, 705 N.W.2d 809. This Court's standard for assessing an ineffective assistance claim is in accord with the test established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> [A] defendant claiming ineffective assistance of counsel has a heavy burden of proving (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance. "Effectiveness of counsel is measured by an 'objective standard of reasonableness' considering 'prevailing professional norms.'" The defendant must first overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Trial counsel's conduct is presumed to be reasonable and courts consciously attempt to limit the distorting effect of hindsight.

*Flanagan v. State,* 2006 ND 76, ¶ 10, 712 N.W.2d 602 (quoting *Heckelsmiller v.*

*State,* 2004 ND 191, ¶¶ 3–4, 687 N.W.2d 454 (citations omitted)); *see also State v. Bates,* 2007 ND 15, ¶ 19, 726 N.W.2d 595.

[¶ 24] "To demonstrate prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, and the defendant must specify how and where trial counsel was incompetent and the probable different result." *Bates,* 2007 ND 15, ¶ 19, 726 N.W.2d 595. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Flanagan,* 2006 ND 76, ¶ 10, 712 N.W.2d 602 (quoting *Heckelsmiller,* 2004 ND 191, ¶¶ 3–4, 687 N.W.2d 454 (citations omitted)).

[¶ 25] We have said an ineffective assistance claim should normally be brought in a post-conviction proceeding "so the parties can fully develop a record ... of counsel's performance and its impact on the defendant's claim." *State v. Bertram,* 2006 ND 10, ¶ 39, 708 N.W.2d 913. However, when an ineffective assistance of counsel claim is argued on direct appeal, we will review whether counsel's representation was plainly defective:

> [W]e review the record to decide if the assistance of counsel was plainly defective. Unless the record affirmatively shows ineffectiveness of constitutional dimensions, the complaining party must show some evidence in the record to support the claim. Representations and assertions of appellate counsel are not enough to establish a claim of ineffective assistance. To successfully claim ineffective assistance of counsel, a defendant must establish counsel's representation

fell below an objective standard of reasonableness and the defendant was prejudiced by counsel's deficient performance.

*Bertram,* 2006 ND 10, ¶ 39, 708 N.W.2d 913 (citation omitted). On appeal, we do not second-guess matters of trial tactics such as whether to call certain witnesses. *See Sayler v. State,* 2005 ND 166, ¶ 10, 704 N.W.2d 559. " '[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " *State v. Schlickenmayer,* 364 N.W.2d 108, 112 (N.D.1985) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

[¶ 26] Here, Schweitzer points to a number of his trial counsel's alleged deficiencies. Schweitzer asserts that before trial, his counsel complained of his workload and requested continuances, delaying his trial and resulting in a lengthy pre-trial incarceration. From the record, however, it appears Schweitzer was actually arrested for another offense while out on bond, which resulted in his bond being revoked. Thus, despite any delay leading up to the trial on the present charges, Schweitzer's continued incarceration was due to his own actions, rather than the result of any alleged ineffective assistance of counsel.

[¶ 27] Schweitzer also points to his trial counsel's failure to object to certain opinion and hearsay testimony, in addition to his counsel's timing in making two motions for judgment of acquittal during trial and failure to poll the jury after the verdict was read. Schweitzer also asserts his counsel erred by not giving an opening statement and failing to call witnesses on his behalf.

[¶ 28] On this record, however, Schweitzer has not established that his trial counsel was plainly defective. Schweitzer's claimed deficiencies of his tri-

al counsel conceivably could be explained as trial strategy. "When the record on direct appeal is inadequate to determine whether the defendant received ineffective assistance, the defendant may pursue the ineffectiveness claim at a post-conviction proceeding where an adequate record can be made." *State v. Strutz,* 2000 ND 22, ¶ 26, 606 N.W.2d 886.

[¶ 29] From our review of this record, we conclude Schweitzer has failed on direct appeal to establish he received ineffective assistance of counsel.

### V

[¶ 30] The district court judgment is affirmed.

[¶ 31] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.