2007 ND 146

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Art TIBOR, Defendant and Appellant.**

**No. 20060274.**

Supreme Court of North Dakota.

Aug. 30, 2007.

Nicole Ellan Foster, Williston, N.D., for plaintiff and appellee.

Kevin Joseph Chapman, Williston, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Art Tibor appeals from a judgment entered after a jury found him guilty of two counts of gross sexual imposition. Tibor argues the district court abused its discretion in allowing expert testimony, allowing the expert witness to vouch for the victim's credibility, and allowing cumulative and hearsay testimony. Tibor also argues there is insufficient evidence to sustain his convictions. We affirm.

I

[¶ 2] On December 9, 2005, Jane Doe, an eleven-year-old girl, gave her school counselor a note telling the counselor something had been happening at her house since she was in kindergarten and she needed to tell someone. The counselor met with Doe and Doe told her Art Tibor, her stepfather, had been touching her breasts and vagina every day after school when her mother was not home.

[¶ 3] Doe's allegations were reported to social services, and Monique Goff, a social worker and forensic interviewer, interviewed Doe on December 9, 2005. Doe said Tibor used his hands to touch her breasts and vagina. Doe said the incidents occurred after school in her bedroom, the laundry room, Tibor's bedroom, and the basement living room, when her mother was at work.

[¶ 4] On December 13, 2005, Dr. Beverly Tong, an OB/GYN, conducted a sexual assault exam on Doe. Doe told her Tibor had touched her vagina with his fingers, the incidents would occur at least several times a month and sometimes more than once a week, and it would sometimes hurt when she urinated after Tibor touched her vagina. During the exam, Dr. Tong observed a healing tear, about 4 millimeters long, on Doe's posterior fourchette, an area of her genitals. Tong testified the abrasion was consistent with Doe's allegations.

[¶ 5] Tibor was initially charged with one count of gross sexual imposition. An amended information was filed on June 7, 2006, charging Tibor with five counts of gross sexual imposition for allegedly abusing Doe between August 1, 2005, and December 10, 2005, in violation of N.D.C.C. §§ 12.1–20–03(2)(a) and 12.1–20–03(1)(d). Count 1 alleged Tibor touched Doe's breasts. Count 2 alleged Tibor made Doe touch his penis with her hands. Count 3 alleged Tibor inserted his penis into Doe's mouth. Count 4 alleged Tibor inserted his tongue into Doe's vulva. Count 5 alleged Tibor touched Doe's vagina with his finger.

[¶ 6] Before trial, the State disclosed that it planned to call Paula Condol as an expert witness to testify about the typical behaviors of sexually abused children. Condol is the Coordinator for the Dakota Children's Advocacy Center and a forensic interviewer who has interviewed over 800 children. The State's disclosure said:

Ms. Condol will testify regarding the Child Sexual Abuse Accommodation Syndrome and the typical behaviors of sexually abused children. She may provide some testimony about child development as it relates to perception, memory recall, and vocabulary.

Ms. Condol may testify regarding her analysis of the child's interview and whether there are indications that the child was just repeating what was suggested to her, or whether she was willing to correct inaccurate information or deny the premise of certain questions.

Without the assistance of an expert, the trier of fact often misinterprets delayed reporting, initial minimization of the abuse, and inconsistent accounts as evidence that the child was not abused. Ms. Condol will describe her review of the materials presented to her regarding the Art Tibor case and whether the behaviors of and disclosures of the victim are consistent with or inconsistent with typical reactions of sexually abused children.

Ms. Condol will not be asked whether she believes that the victim is telling the truth or whether she believes the victim was sexually abused, as those areas are the province of the jury.

The State also disclosed that it planned to call Dr. Alonna Norberg, a pediatrician and the medical director of the Red River Children's Advocacy Center, as an expert witness to testify about the abrasion on the child's genitals and whether it was consistent with Doe's allegations.

[¶ 7] Tibor moved in limine to exclude Condol's testimony, arguing the State was attempting to invade the province of the jury, the testimony would be prejudicial, would not be helpful, and would only confuse the jury. The district court denied Tibor's motion, finding Condol is an expert witness and her specialized knowledge about typical behaviors of sexually abused children may assist the jury in understanding the evidence or determining the facts in issue.

[¶ 8] The State also gave notice of its intent to offer hearsay testimony. The State planned to present testimony about Doe's out-of-court statements made to Dr. Tong and Goff. Tibor objected, a hearing was held, and the court concluded Doe's out-of-court statements were admissible because the requirements for admission of a child's statement about sexual abuse under N.D.R.Ev. 803(24) had been met and there were sufficient guarantees of trustworthiness.

[¶ 9] A jury trial was held on July 31, 2006, to August 2, 2006. Doe, two of Doe's brothers, Dr. Tong, Dr. Norberg, Detective Ladwig, Goff, Condol, and others testified. Tibor testified and presented testimony from a number of witnesses, including family members, friends, and an expert witness, who testified about other possible causes of the abrasion on Doe's genitals.

[¶ 10] Doe was reluctant to talk about the abuse, but testified Tibor touched her breasts with his hands, she had to touch Tibor's penis with her hands and her mouth, and he touched her vagina with his fingers and his tongue. Doe testified it would hurt when she urinated after he touched her vagina with his fingers. Doe testified the abuse would occur after school in her bedroom, Tibor's bedroom, and in the laundry room, when her mother was still at work. She testified the abuse occurred when she was in sixth grade, and she told her school counselor about the abuse the day after Tibor put his tongue in her vagina. Doe's brothers testified there were times when Tibor was alone with Doe in a room with the door closed.

[¶ 11] Dr. Norberg reviewed Doe's medical records and testified about Dr. Tong's examination. She testified Doe's complaint about pain when she urinated after Tibor touched her vagina was consistent with sexual abuse. She testified the condition of the abrasion on Doe's genitals indicated Doe had suffered the injury more than 24 to 48 hours before the physi-

cal examination, and the abrasion was consistent with Doe's allegations. She also testified that abrasions of this type heal very quickly.

[¶ 12] Condol testified about the child sexual abuse accommodation syndrome, which is a model used to help understand how children react to sexual abuse. She testified the child sexual abuse accommodation syndrome has five categories of behaviors exhibited by sexually abused children: secrecy, helplessness, accommodation and entrapment, delayed or unconvincing disclosures, and retraction. Condol testified about each category of behavior explaining how a child typically reacts to abuse and how their reaction is different from what most people expect.

[¶ 13] Condol did not interview Doe, but reviewed Goff's interview with Doe. She testified she observed a change in Doe's demeanor when she was talking about the abuse; Doe became very quiet and still, and children typically react this way when talking about sexual abuse. Condol also testified Doe's behavior and the process she went through disclosing the abuse was consistent with the five categories of the child sexual abuse accommodation syndrome:

> Well, it's my understanding from reviewing those five areas that she did keep it a secret for a number of years. That, you know, she was helpless; she didn't fight back, things like that. That she just kind of accommodated to the situation. You know, her disclosure was, you know, different at times, and she did not retract, but, you know, she did minimize when she did her first interview about what had happened to her.
>
> So, you know, from my—just view of the information and the research, you know, it seems that she has gone through those stages.

On cross-examination, Tibor's attorney asked Condol if she had an opinion about whether Doe had been sexually abused, and she testified she did not.

[¶ 14] Goff testified Doe's demeanor changed when she talked about Tibor; her shoulders slumped, she did not make as much eye contact, and her voice lowered. Goff testified Doe's change in demeanor was consistent with someone who has suffered a traumatic event. Williston Police Department Detective Tom Ladwig observed the interview and also testified Doe's demeanor changed when she talked about the abuse. Detective Ladwig testified Doe withdrew into herself when she was questioned about Tibor, her eyes went down to the table, and she was reluctant to answer the questions. He testified Doe's behavior was consistent with that of an abuse victim. Tibor objected to the testimony about Doe's demeanor, arguing it was hearsay and was not disclosed in the State's pretrial notice of its intent to use hearsay testimony. The court overruled Tibor's objection, and allowed the testimony.

[¶ 15] The jury found Tibor guilty of counts 4 and 5, but acquitted him of the three remaining counts. Tibor was sentenced to twelve years in prison.

II

[¶ 16] Tibor argues the court abused its discretion in allowing Condol's testimony about child sexual abuse accommodation syndrome. He also argues the court further abused its discretion in allowing Condol to testify to matters outside of what was disclosed before trial; he claims Condol vouched for the child's credibility and testified the abuse actually occurred.

[¶ 17] The admissibility of expert testimony is governed by N.D.R.Ev.

702 through 706. Rule 702, N.D.R.Ev., allows the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether the testimony is useful and will assist the trier of fact is within the court's discretion, and a court's decision to allow expert testimony will not be overturned on appeal unless the court has abused its discretion. *State v. Austin*, 2007 ND 30, ¶¶ 9–10, 727 N.W.2d 790. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* at ¶ 10. "Expert testimony is not admissible if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* at ¶ 9 (quoting *Praus v. Mack*, 2001 ND 80, ¶ 34, 626 N.W.2d 239).

[¶ 18] Before deciding whether to allow Condol's testimony, the record reveals the district court heard arguments from both sides, took time to consider the arguments, and found:

> Given Ms. Condol's education, experience and training, and recognizing that she has interviewed over eight hundred (800) children during the course of her career—with approximately ninety-five percent (95%) of that number having made allegations of sexual abuse—the Court has no difficulty concluding that Ms. Condol qualifies as an expert in relation to what has become known as the Child Sexual Abuse Accommodation Syndrome. Based upon the information submitted to the Court, the Court is satisfied that Ms. Condol possesses specialized knowledge concerning typical behaviors of sexually abused children, which may assist the jury in this case in understanding the evidence or determining a fact (or facts) in issue. Accordingly, it is the Court's decision to allow Ms. Condol to testify as an expert in this case.

The court concluded Condol's testimony was useful and would assist the jury.

[¶ 19] This Court has never addressed whether a district court abuses its discretion when it allows expert testimony about child sexual abuse accommodation syndrome. However, other courts have considered the issue and concluded an expert witness may testify about typical behaviors or characteristics of sexually abused children and whether a specific victim exhibits symptoms consistent with sexual abuse. *See, e.g., United States v. Kirkie*, 261 F.3d 761, 765–66 (8th Cir. 2001); *State v. Silvey*, 894 S.W.2d 662, 670–71 (Mo.1995); *State v. McCall*, 162 N.C.App. 64, 589 S.E.2d 896, 900–01 (2004); *State v. Huntington*, 216 Wis.2d 671, 575 N.W.2d 268, 279 (1998). *But see, Commonwealth v. Federico*, 425 Mass. 844, 683 N.E.2d 1035, 1039 (1997) (expert can testify to general characteristics of a sexual abuse victim, but may not compare them to the victim in the case). Although the district court has discretion to allow expert testimony about child sexual abuse accommodation syndrome, the court must be careful not to allow an expert to vouch for the child victim's credibility. *See United States v. Azure*, 801 F.2d 336, 340–41 (8th Cir.1986). We conclude a court does not abuse its discretion in allowing expert testimony about child sexual abuse accommodation syndrome if the testimony may

assist the jury in understanding the evidence.

[¶ 20] The district court found Condol was qualified as an expert in the child sexual abuse accommodation syndrome and her testimony would assist the jury in understanding the evidence or determining a fact in issue. The court's decision to allow Condol's testimony was the product of a rational mental process, and the court did not act in an arbitrary, unreasonable, or unconscionable manner. We conclude the court did not abuse its discretion.

[¶ 21] Tibor claims Condol vouched for Doe's credibility and testified she believed Doe had been abused. He claims this testimony exceeded the scope of what the State proposed in its disclosure, and the district court abused its discretion in allowing this testimony.

[¶ 22] In the State's disclosure of expert witnesses, the State proposed that Condol would "describe her review of the materials presented to her regarding the Art Tibor case and whether the behaviors of and disclosures of the victim are consistent with or inconsistent with typical reactions of sexually abused children." The State further said, "Ms. Condol will not be asked whether she believes that the victim is telling the truth or whether she believes the victim was sexually abused, as those areas are the province of the jury." Tibor claims Condol testified that she believed Doe was abused, but Condol did not testify to the victim's credibility or whether she believed the child was a victim of sexual abuse. Condol testified Doe appears to have gone through the five stages of child sexual abuse accommodation syndrome, and Doe's behavior was consistent with someone who has been abused. Tibor's attorney asked Condol, "you have no opinion on whether or not [Doe] has, in fact, been sexually abused; is that correct[,]"

and Condol said, "[c]orrect." While Condol's testimony supports a determination that Doe's allegations are true, it also left open the possibility that Doe's testimony was not truthful and that Tibor did not sexually abuse her. Condol did not testify she believed Doe had been sexually abused, and Condol did not testify outside the scope of what the State disclosed before trial. Condol did not testify about the child's credibility, and therefore her testimony did not invade the province of the jury.

[¶ 23] Tibor contends it is inconsistent to allow the State to present expert testimony about whether a child's behavior is consistent with typical behaviors of children who have been sexually abused when a criminal defendant is not allowed to have an expert testify about the defendant's alleged sexual interest in young females, as he claims we decided in *Austin*, 2007 ND 30, 727 N.W.2d 790.

[¶ 24] In *Austin*, the defendant proposed expert testimony about whether he had a sexual interest in children to help the jury decide whether he would assault a young female, and he claimed the evidence would only be presented as character evidence. *Id.* at ¶ 11. The district court excluded the testimony finding the tests used to determine the defendant's sexual interests were not intended to be employed for the purpose of determining whether the defendant committed the act, the evidence would not be useful to determine whether the defendant committed the crime, and the court was concerned the jury would use the information to infer the defendant's guilt or innocence and would not limit its use of the information to character evidence. *Id.* at ¶ 12. We affirmed the district court's decision, concluding the court's explanation for excluding the testimony was the product of a rational mental process and the decision was not arbitrary,

unreasonable, or unconscionable. *Id.* at ¶ 13. The decision to allow expert testimony is within the court's sound discretion, and we will not overturn that decision on appeal unless the court abuses its discretion. *Id.* at ¶ 10. Just as we held the district court's decision to exclude expert testimony in *Austin* was the product of a rational mental process and the court did not abuse its discretion, we conclude the district court did not abuse its discretion in this case.

[¶ 25] We conclude the court's decision to allow Condol's testimony about child sexual abuse accommodation syndrome and her opinion that Doe's behavior was consistent with that of a child who has suffered from sexual abuse was the product of a rational mental process, and therefore the court did not abuse its discretion.

### III

[¶ 26] Tibor argues the district court abused its discretion in allowing Condol, Goff, and Detective Ladwig to testify about the change in Doe's demeanor during her interview with Goff, because it was hearsay testimony. He also argues the court abused its discretion in admitting testimony about Doe's demeanor and statements she made during the interview with Goff, because the testimony was cumulative and so prejudicial he was unable to effectively cross-examine Doe.

[¶ 27] A district court has broad discretion in evidentiary matters, and a court's decision whether to admit evidence will not be overturned on appeal absent an abuse of discretion. *State v. Wiest,* 2001 ND 150, ¶ 9, 632 N.W.2d 812.

[¶ 28] Tibor argues the district court abused its discretion in allowing testimony about the change in Doe's demeanor during her interview with Goff, because it was hearsay testimony and was not disclosed in the State's pretrial notice. During the trial, Tibor objected to the testimony arguing it was additional hearsay that was not addressed in the State's notice of intent to use hearsay. The State claimed it was not hearsay, but was testimony about Doe's demeanor and attitude. The court overruled Tibor's objection and allowed the testimony.

[¶ 29] Hearsay includes an out-of-court "oral or written assertion or ... nonverbal conduct of a person, if it is intended by the person as an assertion" and "offered in evidence to prove the truth of the matter asserted." N.D.R.Ev. 801. Evidence of nonverbal conduct not intended as an assertion is not hearsay. N.D.R.Ev. 801, Explanatory Note. Doe's nonverbal conduct during the interview was offered as evidence about Doe's demeanor and attitude. The testimony about Doe's demeanor was admissible, non-hearsay evidence, and therefore we conclude the district court did not abuse its discretion in allowing the testimony.

[¶ 30] Tibor also argues the district court abused its discretion in allowing the testimony of Condol, Goff, and Detective Ladwig about Doe's demeanor and statements she made during the interviews because the testimony was cumulative and unfairly prejudicial. Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.D.R.Ev. 403. " '[R]elevant evidence may be excluded under N.D.R.Evid. 403 if its probative value is substantially outweighed by the danger of unfairly prejudicing the defendant.' " *Wiest,* 2001 ND 150, ¶ 9, 632 N.W.2d 812 (quoting *State v. Klein,* 1999 ND 76, ¶ 5, 593 N.W.2d 325).

Rule 403, N.D.R.Ev., should be used sparingly to exclude evidence. *Wiest*, at ¶ 10.

[¶ 31] While the testimony about Doe's demeanor and the statements she made during her interview with Goff was repetitious, "[t]he 'mere repetition' of a child's out-of-court statements 'does not make them unduly prejudicial.'" *Wiest*, at ¶ 10 (quoting *People v. Salas*, 902 P.2d 398, 401 (Colo.Ct.App.1994)). We conclude the district court did not abuse its discretion in admitting the testimony about Doe's demeanor and statements she made during the interview.

### IV

[¶ 32] Tibor argues the evidence in the record is insufficient to sustain his convictions. He contends Doe's inconsistent statements and her unwillingness to talk about all the abuse she ever encountered when she first began disclosing the abuse are proof of his innocence. Tibor argues he could not be responsible for the abrasion on the child's genitals because the last alleged incident of abuse occurred five days before the child's physical examination, and Dr. Norberg testified the abrasion was probably more than 24–48 hours old and would heal quickly. Tibor claims he proved he did not have time to abuse Doe because of his work schedule and family responsibilities.

[¶ 33] We outlined the standard of review for challenges to sufficiency of the evidence in *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819:

In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict.

(Citations omitted).

[¶ 34] Tibor was convicted of two counts of gross sexual imposition for inserting his tongue into Doe's vulva and for using his finger to touch Doe's vagina. While there was evidence presented that could have led to a not guilty verdict on all counts, there is also sufficient evidence to sustain Tibor's convictions. Doe testified Tibor touched her vagina with his finger and his tongue when she was in sixth grade in 2005. Doe testified the abuse occurred after school when her mother was still at work. There was evidence Tibor often was home alone with Doe and her siblings after school. Doe's brothers testified there were times when Doe was alone with Tibor in a room with the door closed or locked. Dr. Tong and Dr. Norberg testified the abrasion on Doe's genitals was consistent with her allegations of sexual abuse. Condol testified Doe's behavior was consistent with typical behaviors of sexually abused children. Reviewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably

to be drawn in its favor, a rational fact finder could find Tibor guilty beyond a reasonable doubt. We conclude there is sufficient evidence to sustain Tibor's convictions.

## V

[¶ 35] We conclude the district court did not abuse its discretion in allowing Condol's testimony, or in allowing cumulative and hearsay testimony, and we conclude there is sufficient evidence to sustain Tibor's convictions. We affirm the judgment.

[¶ 36] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.