# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

---

### 2025 ND 130

---

State of North Dakota,                                      Plaintiff and Appellee

v.

Kamauri Siede Kennedy,                                   Defendant and Appellant

---

### No. 20240346

---

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Gary H. Lee, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

John M. Gonzalez (argued), Special Assistant State's Attorney, Jamestown, ND, and Tiffany M. Sorgen (on brief), Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

# State v. Kennedy
## No. 20240346

**Bahr, Justice.**

[¶1]  Kamauri Kennedy appeals a criminal judgment entered following a jury verdict finding him guilty of murder. On appeal, Kennedy argues the district court erred by failing to exclude prior bad acts evidence, the State committed prosecutorial misconduct in its closing argument, and the court abused its discretion in denying Kennedy's request for alternate counsel. We affirm.

I

[¶2]  In July 2021, the State charged Kennedy with murder and conspiracy to commit murder, both class AA felonies.

[¶3]  The district court scheduled a jury trial for April 3, 2024. On March 21, 2024, two weeks before trial, Kennedy's counsel, William Skees, filed a motion to withdraw for non-payment of legal fees. The State opposed the motion. Kennedy requested a new lawyer be appointed to his case. After a hearing, the court denied Skees's motion to withdraw and Kennedy's request for a new lawyer.

[¶4]  After commencing the trial on April 3, 2024, the district court continued the trial due to "late-discovered evidence that needs to be investigated." A new trial was set for September 18, 2024. On September 2, 2024, Skees filed another motion to withdraw from representation because he was winding down his legal practice. During a status conference, the State opposed the motion. The court denied the motion.

[¶5]  Kennedy proceeded to trial on September 18, 2024. At the close of trial, Kennedy made a motion for acquittal on both the murder charge and the conspiracy to commit murder charge. The district court granted the motion on the conspiracy to commit murder charge. The jury returned a guilty verdict on the murder charge. The court sentenced Kennedy to life without parole.

[¶6]  Kennedy argues the district court erred by failing to exclude prior bad acts evidence. He asserts the evidence was introduced without proper notice under N.D.R.Ev. 404(b)(3). He further asserts the court did not perform the three-step analysis required under N.D.R.Ev. 404(b). *See State v. Villazana*, 2024 ND 211, ¶ 13, 14 N.W.3d 76 (discussing three-step analysis to determine whether the evidence of other crimes, wrongs, or acts is admissible). Finally, Kennedy asserts the court failed to conduct the balancing test under N.D.R.Ev. 403. *See id.* ¶ 21 ("Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence."). Kennedy concedes he did not object to the introduction of the evidence and requests this Court review the admission of the evidence under obvious error.

A

[¶7]  "[I]ssues not raised at trial will not be addressed on appeal unless the alleged error rises to the level of obvious error under N.D.R.Crim.P. 52(b)." *State v. Pemberton*, 2019 ND 157, ¶ 8, 930 N.W.2d 125 (quoting *State v. Lott*, 2019 ND 18, ¶ 8, 921 N.W.2d 428). This Court's obvious error standard is well-established:

> To establish an obvious error, the defendant must show: (1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights. To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established. When a defendant proves obvious error occurred, this Court has discretion whether to rectify it and will only do so when the error seriously affects the fairness, integrity or public reputation of judicial proceedings. In analyzing obvious error, our decisions require examination of the entire record and the probable effect of the alleged error in light of all the evidence.

*State v. Woodman*, 2025 ND 12, ¶ 5, 16 N.W.3d 164 (cleaned up).

B

[¶8] Kennedy argues the district court improperly allowed prejudicial character evidence, including evidence about Kennedy's prior federal convictions, drug activities, and probation violations. The State contends obvious error review is not available because Kennedy invited the error.

[¶9] During voir dire, Kennedy's counsel stated:

> As you'll learn during the trial, Mr. Kennedy is an African American male who hails from the Detroit, Michigan area, and he does have a criminal history that includes both violence and drugs. And you may also learn that he is currently serving a federal prison sentence and was also on federal supervised release when the alleged events in this case occurred. Knowing all of that, how many of you feel that you might have some difficulty presuming that Mr. Kennedy is innocent of the charges against him in this case?

[¶10] During trial and outside the presence of the jury, Kennedy stated he did not object to including information about his probation status in the jury instructions.

> MR. SKEES: And Your Honor, we have no objection to there being an instruction that defendant is on probation and that no inference can be drawn but we would have an objection to the part that indicates that this goes to show that he had an opportunity to commit the offense charged in because he was not at all located within the area of the probation officer.

A final instruction read:

> DEFENDANT ON PROBATION
> There is evidence in the case that the Defendant was previously arrested and convicted of a crime and placed on probation supervision. That evidence was introduced for the sole purpose to explain the facts surrounding the investigation. You are prohibited from using this information to assume that the Defendant is more likely to be guilty of this offense. He is to be judged on this offense based only on the evidence regarding this offense alone.

3

[¶11] "The obvious error analysis under N.D.R.Crim.P. 52(b) does not apply to errors waived through the doctrine of invited error." *State v. Wiese*, 2024 ND 39, ¶ 8, 4 N.W.3d 242 (quoting *State v. Yoney*, 2020 ND 118, ¶ 12, 943 N.W.2d 791). "The rationale for that rule precludes a defendant from inviting error in the hope that if the defendant does not prevail in the trial court, he will prevail upon appellate review of the invited error." *Id*. (quoting *State v. Doppler*, 2013 ND 54, ¶ 14, 828 N.W.2d 502). A party can invite error during voir dire. *See Nix v. State*, 158 N.E.3d 795, 800 (Ind. Ct. App. 2020) (defendant, who did not request voir dire be individualized, invited jurors' exposure to his criminal history by inquiring about potential biases based on pretrial publicity); *State v. Hohensee*, 353 S.W.3d 445, 446-47 (Mo. Ct. App. 2011) (defense counsel's statement in voir dire that "defendant may or may not testify" was invited error); *State v. Deiterman*, 271 Kan. 975, 981, 29 P.3d 411 (2001) (venireperson's voir dire response to defense counsel's question on media coverage—asked over the State's objection and after being admonished and warned by the court that he would have to "live with the consequences"—was invited error); *State v. Elmore*, 139 Wash. 2d 250, 280, 985 P.2d 289 (1999) (en banc) (misstatement of evidence in statement of facts read to the jurors at the beginning of voir dire was invited error where defense proposed the facts and its presentation, assisted in its drafting, and agreed to its content); *People v. Jones*, 2023 COA 104, ¶¶ 62-63, 543 P.3d 419 (any misconduct by prosecutor in discussing certain matters during voir dire was invited error where prosecutor and defendant submitted a stipulated questionnaire inviting prospective jurors to address the matters).

[¶12] Kennedy, through counsel, told the potential jurors Kennedy had a "criminal history that includes both violence and drugs," was "serving a federal prison sentence," and that Kennedy was "on federal supervised release when the alleged events in this case occurred." Later, Kennedy stated he did not object to an instruction informing the jury he is on probation. The final instructions explained Kennedy "was previously arrested and convicted of a crime and placed on probation supervision."

[¶13] We conclude Kennedy invited the alleged error of the district court not excluding evidence regarding his probation status, that he has a criminal history, and that his criminal history includes violence and drugs. Therefore, this alleged

4

error is not reviewable. *See State v. Smith*, 2023 ND 6, ¶ 8, 984 N.W.2d 367 (stating the defendant "may not seek reversal of an error he waived or invited."); *State v. Houle*, 2022 ND 96, ¶ 7, 974 N.W.2d 401 ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." (quoting *State v. Rende*, 2018 ND 56, ¶ 9, 907 N.W.2d 361)).

C

[¶14] Kennedy's argument the district court improperly allowed prejudicial character evidence goes beyond the evidence he invited during voir dire and through the instructions. The additional evidence Kennedy alleges the court should have excluded, despite the lack of objection, includes details about his federal convictions, statements Kennedy absconded from probation, testimony Kennedy used an I.D. under a different name during a traffic stop, and testimony implicating Kennedy's involvement in a domestic disturbance call.

[¶15] Kennedy asserts "[t]he district court committed obvious error by failing to exclude evidence introduced in violation of Rule 404(b)[.]" He further asserts the court's "[f]ailure to conduct th[e Rule 403] balancing test constitutes an abuse of discretion." Kennedy's argument distorts the roles of the district court and the parties before the court.

[¶16] It was the responsibility of Kennedy, not the district court, to object to evidence Kennedy believed was inadmissible. *See* N.D.R.Ev. 103(a). "A party, not the trial judge, must take the initiative to object to offered evidence." *State v. Hernandez*, 2005 ND 214, ¶ 12, 707 N.W.2d 449; *see also State v. Tresenriter*, 2012 ND 240, ¶ 9, 823 N.W.2d 774 ("The initiative is placed on the party, not on the judge, to object to offered evidence." (cleaned up)). "A party must make a specific objection to evidence at the time it is offered for admission into evidence to give the opposing party an opportunity to argue the objection and attempt to cure the defective foundation, and to give the trial court an opportunity to fully understand the objection and appropriately rule on it." *State v. Henderson*, 2024 ND 42, ¶ 7, 4 N.W.3d 223 (quoting *State v. Thomas*, 2022 ND 126, ¶ 17, 975 N.W.2d 562). Kennedy's failure to object to the evidence precluded the State from arguing the evidence's admissibility and the court from conducting the analysis

required under N.D.R.Ev. 404(b). *Cf. State v. Watts*, 2024 ND 158, ¶ 25, 10 N.W.3d 563 ("An appellant's failure to raise an issue at the district court may impact the appellant's ability to establish obvious error.").

[¶17] A judge's role is to assure fairness and uphold due process throughout the proceedings. *See Baier v. Hampton*, 440 N.W.2d 712, 715 (N.D. 1989) ("A fair trial in a fair tribunal is a basic requirement of due process." (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed.942 (1955))). It is equally important that a judge not usurp the role of counsel. *See State v. Foard*, 355 N.W.2d 822, 824 (N.D. 1984) ("A judge may not be a partisan advocate for either side and in conducting a trial must respect the traditional rules and concepts which guaranty the defendant's right to a fair trial."); *State v. Ismail*, 2022 ND 199, ¶ 6, 981 N.W.2d 896 (stating a trial court abuses its discretion when it assumes the role of an advocate); *State v. Olson*, 244 N.W.2d 718, 722 (N.D. 1976) ("[A] trial judge should be aware that the appearance of justice is diminished when he substitutes a three-piece suit of advocacy for his robe of impartiality.").

[¶18] Kennedy's suggestion the district court should have intervened by excluding evidence Kennedy did not object to invites the court to usurp the role of counsel and hinder counsel's trial strategy. A party may intentionally not object to potentially inadmissible evidence for numerous strategic reasons. *See Clark v. State*, 2008 ND 234, ¶ 27, 758 N.W.2d 900 ("A trial attorney's failure to object to hearsay testimony can be attributed to trial strategy."); *State v. Schweitzer* 2007 ND 122, ¶¶ 27-28, 735 N.W.2d 873 (indicating counsel's failure to object to testimony could be considered trial strategy). The court ruling on the admissibility of evidence when not invited to by a party can disrupt a party's trial presentation and sabotage a party's trial strategy. There may be occasions when a party introduces evidence that is so prejudicial the court should intervene despite the lack of an objection. Those occasions may include when the admission of the evidence impacts a party's constitutional right.

[¶19] Based on the specific facts of this case, including the nature of the evidence at issue, the context in which it was introduced, and the potential purposes for which it was introduced, we conclude Kennedy has not demonstrated the district

court erred by not excluding the character evidence when Kennedy did not object to its admission.

## III

[¶20] Kennedy argues he was deprived of his constitutional right to a fair trial because of prosecutorial misconduct during closing arguments. Kennedy asserts the prosecutor's closing argument included improper burden-shifting arguments, materially mischaracterized witness testimony, and included an impermissible emotional appeal. Acknowledging he made no objection to the State's closing argument, Kennedy requests we consider the issues under the obvious error standard of review.

## A

[¶21] "When there is a claim of prosecutorial misconduct, we determine whether the prosecutor's actions were misconduct and, if they were, whether the misconduct had prejudicial effect." *State v. Pena Garcia*, 2012 ND 11, ¶ 6, 812 N.W.2d 328. "Although prosecutorial misconduct may create unfairness amounting to a due process violation, not every assertion of prosecutorial misconduct automatically rises to an error of constitutional dimension." *State v. Hannesson*, 2023 ND 80, ¶ 6, 989 N.W.2d 501 (quotation marks omitted). Where there is no objection to the prosecutor's argument at trial, this Court will not reverse unless it was an obvious error affecting a defendant's substantial rights. *State v. Massey*, 2024 ND 118, ¶¶ 14, 19, 8 N.W.3d 308 (concluding the defendant failed to demonstrate the State's improper "golden rule" closing argument had a prejudicial effect due to the substantial evidence supporting the convictions).

## B

[¶22] Kennedy argues the State committed prosecutorial misconduct by making an improper emotional appeal during closing argument.

[¶23] It is well-established that a jury cannot convict "a defendant on the basis of mere suspicion, speculation, conjecture, passion, prejudice, or sympathy." *State v. Hannah*, 2016 ND 11, ¶ 11 873 N.W.2d 668 (quoting *State v. Miller*, 357

N.W.2d 225, 227 (N.D. 1984)). "For instance, 'an emotional appeal calculated to persuade the jury to decide the case on other than the facts before it' is prohibited." *U.S. v. Eagle*, 515 F.3d 794, 805 (8th Cir. 2008); *see also State v. Kaiser*, 417 N.W.2d 376, 379 (N.D. 1987) ("Remarks by counsel that are made for the purpose of arousing sympathy or prejudice are improper and counsel must refrain from such action."). This Court recently explained:

> To determine whether a prosecutor's misconduct rises to a level of due process violation, we decide if the conduct, in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights. If conduct was sufficiently prejudicial, we then consider the probable effect the prosecutor's improper comment would have on the jury's ability to fairly judge the evidence.

*Hannesson*, 2023 ND 80, ¶ 6 (quoting *State v. Bazile*, 2022 ND 59, ¶ 7, 971 N.W.2d 884); *see also Kaiser*, at 380 (concluding, "after considering the nature of the prosecutor's statement to the jury and the probable effect on the jury in the context of the entire trial," the prosecutor's comments during closing argument "did not affect the verdict prejudicially or deprive the defendant of a fair trial").

[¶24] "In reviewing claims involving improper prosecutorial comments, we have noted the following: Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *Hannesson*, 2023 ND 80, ¶ 6 (quoting *Bazile*, 2022 ND 59, ¶ 7). "Claims of improper argument are generally not grounds for reversal because it is presumed the jury will follow the trial court's admonition and disregard improper statements." *Pena Garcia*, 2012 ND 11, ¶ 10; *see also State v. Patterson*, 2014 ND 193, ¶ 14, 855 N.W.2d 113 ("Any prejudice from the prosecutor's rebuttal closing argument was minimized by the jury instructions.").

[¶25] During the State's closing argument, the prosecutor stated, "This case isn't about Kamauri Kennedy; it is about [Jane Doe]. This case is about seeking justice for [Jane Doe]." We have previously held that similar language during closing argument "did not imply that the jury should convict out of sympathy to the victim." *Kaiser*, 417 N.W.2d at 379-80 (holding the prosecutor's statements "to

8

render justice" for the victim during closing argument were not implying the jury should convict out of sympathy). Moreover, the district court instructed the jurors that it is their duty "to weigh and to consider all of the evidence," and that the evidence consists of witness testimony and exhibits received. It also instructed the jurors that the attorneys' arguments and other remarks "must not be considered by you as evidence." The court further instructed the jurors Kennedy is presumed innocent, "the State must prove all of the essential elements of the offense beyond a reasonable doubt," the elements of the offense, and the meaning of proof beyond a reasonable doubt. Instructing the jurors that they "must be fair and impartial," the court explained, "Your decision must not be influenced by sympathy or by emotion."

[¶26] The prosecutor's statement during closing argument does not appear improper. However, even if it were, we presume the jury followed the district court's instructions, eliminating or minimizing any prejudice from the prosecutor's comment. We conclude Kennedy failed to demonstrate the prosecutor's statement constituted obvious error affecting his substantial rights.

C

[¶27] Kennedy alleges the State's closing arguments mischaracterized witness testimony and improperly shifted the burden of proof to him. The State argues the portions of the transcript quoted in Kennedy's brief were his closing arguments, not the State's. Kennedy acknowledged this error at argument.

[¶28] We note with concern that Kennedy's allegations were advanced without proper support from the record. Notably, Kennedy's brief cites portions of the transcript and mischaracterizes the source of the statements, attributing them to the State when, in fact, they were made by defense counsel. Kennedy further asserts the State mischaracterized witness testimony by improperly quoting the witness's statement, yet a review of the transcript indicates the State's quotation is consistent with the witness's testimony. Attorneys have an obligation to ensure that the arguments they present are factually and legally supported. N.D.R.App.P. 28(l) ("All briefs under this rule must be concise, *presented with accuracy*, logically arranged with proper headings, and free from burdensome,

9

irrelevant or immaterial matters." (emphasis added)). Kennedy's counsel's failure to ensure these arguments were supported by the record is not consistent with that obligation. We strongly discourage the practice of advancing arguments without a careful and accurate grounding in the record.

IV

[¶29] Kennedy argues the district court abused its discretion by denying his request for alternate counsel despite a breakdown of the attorney-client relationship over the non-payment of legal fees.

[¶30] Kennedy requested his attorney be "taken off" of his case in March 2024, approximately two weeks before the first scheduled trial. He also stated he needed "an appointed lawyer." After the district court denied his request, the court continued the April 3, 2024 trial and rescheduled trial for September 18, 2024. Despite the intervening months, Kennedy did not make a further request for substitute counsel.

[¶31] Whether to appoint substitute counsel is committed to the sound discretion of the district court. *State v. Yost*, 2014 ND 209, ¶ 9, 855 N.W.2d 829. This Court reviews a district court's denial of substitute counsel under the abuse of discretion standard. *Id.* Whether to grant a motion to withdraw as counsel is also within the sound discretion of the district court. *In re I.B.A.*, 2008 ND 89, ¶ 10, 748 N.W.2d 688. Although neither Skees nor Kennedy specifically requested a continuance, the district court noted granting their requests would necessarily require continuance of the trial. "The district court has broad discretion over the progress and conduct of a trial, and the determination whether to grant a continuance lies within the sound discretion of the district court." *Lund v. Lund*, 2011 ND 53, ¶ 7, 795 N.W.2d 318. "We will not reverse a district court's decision to deny a motion for a continuance absent an abuse of discretion." *Id.* "A district court abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law." *State v. Glaum*, 2024 ND 47, ¶ 37, 4 N.W.3d 540 (quoting *State v. Carlson*, 2016 ND 130, ¶ 6, 881 N.W.2d 649).

[¶32] During a hearing on Skees's motion to withdraw, the district court addressed the five motion for continuance factors identified in *United States v. Ware*, 890 F.2d 1008, 1010 (8th Cir. 1989). *See State v. Wicks*, 1998 ND 76, ¶ 27, 576 N.W.2d 518 (citing *Ware* when addressing a continuance for the purpose of changing lawyers). The court explained:

> If I were to delay this trial, we'd be looking at trying to get another attorney for Mr. Kennedy, my calendar would probably not allow a date certain for many, many months. And any attorney we brought on would probably request, my guess would be six or so months to get ready to review all the information, to do a proper investigation, to consult with Mr. Kennedy. So the time required— certainly there has been enough time passed and any kind of continuance at this late date is going to just kick this matter down for at least six months, would be my guess. And so that factor, I think, weighs against the motion for withdrawal.
>
> The second factor is the diligence of the moving party. And Mr. Skees, two weeks before a DUI might be one thing. But two weeks before a murder trial, a AA felony, that is hardly a—that's hardly diligence. If Mr. Kennedy was having financial problems, those problems should have been apparent some time much, much earlier than two weeks before a trial. This motion to withdraw comes literally on the doorstep. And I think the lack of diligence on your part, again, weighs against granting your motion to withdraw and granting your request for a continuance.
>
> Number three is the conduct of the other party. And the State is ready to go. They have, according to [the State], spent, I don't know, many thousands of—hundreds of hours preparing for this thing. They have subpoenaed witnesses across the state and from out of state. They've got federal writs to bring witnesses in from federal custody. All of that shows—I mean, first of all, there's nothing that the State has done that's caused any need for delay or necessity for a continuance or delay. State stands ready to go. They've spent many hundreds if not thousands of dollars on airline tickets and transportation expenses and other expenses. All that gets flushed down the drain if we grant your motion to withdraw and have to continue the matter.
>
> Number four is the effective delay. Again, we've talked about that in these other matters. The State's efforts, the State's money are gone. The work of the Court to call a jury panel of I think it's about

100 is wasted. And then the delay on Mr. Kennedy, he needs to know thumbs up, thumbs down what his future is going to look like, and a six-month delay or more doesn't work to his advantage. And the State and the alleged victim's family have a right to have this matter resolved. And the public has a right to have the matter resolved as well. And so the effective delay is significant, and it weighs all on the State's side and the Court's side. It doesn't lie on the—the effective delay weighs against granting any withdrawal or continuance in this matter.

And lastly, the reasons for the continuance are delayed, Mr. Skees, that's all on you. Your reason for this delay is that you didn't get the money upfront, and that you waited until the last minute before you tried to get that money upfront. And that all falls on you.

[¶33] The district court's decision to deny Skees's motion to withdraw and Kennedy's request for new counsel was the product of a rational mental process leading to a reasoned decision. The court discussed the delay that would occur if the motion and request were granted. It also discussed the timing of the motion and request, as well as Skees's and Kennedy's lack of diligence in making the motion and request. The court addressed the significant time and expense the State expended in preparing for the trial, that the State did nothing to necessitate a continuance, and the effect of a delay on the State, the court, the alleged victim's family, and the public. Finally, the court explained the reasons for the continuance fall on Skees.

[¶34] As previously noted, Kennedy did not make a subsequent request for substitute counsel. Skees, however, filed a second motion to withdraw two weeks before the September 18, 2024 trial. He waited until two weeks before trial despite having five months to assess representation and, if necessary, move to withdraw. That Kennedy's request and both of Skees's motions were filed only two weeks before trial support the district court's conclusion the request and motions were untimely. *See State v. Lewellyn*, 2025 ND 98, ¶ 13, 21 N.W.3d 108 (affirming the district court's denial for substitute counsel when defendant requested new counsel one day before trial); *State v. Yarbro*, 2014 ND 164, ¶ 12, 851 N.W.2d 146 (indicating N.D.R.Ct. 6.1(b) requires a motion for continuance be "filed as soon as the grounds therefor are known"); *Lund*, 2011 ND 53, ¶¶ 10-11 (holding the district court did not abuse its discretion in denying a motion for

12

continuance made one week before trial "despite ample opportunity to secure counsel"); *see also U.S. v. Jafari*, 24 F.Supp.3d 291, 293 (W.D.N.Y. 2014) ("Courts are hesitant to grant motions to withdraw made on the eve of trial.").

[¶35] We hold the district court did not abuse its discretion in denying both of Skees's motions to withdraw and Kennedy's request for new counsel.

V

[¶36] We hold the district court did not commit obvious error by not excluding evidence when there was no objection, the court did not err by not intervening in the State's closing argument when there was no objection, and the court did not abuse its discretion in denying Kennedy's request for new counsel and defense counsel's motions to withdraw. We affirm the court's judgment.

[¶37] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr